Richard WOMMACK, Mary Lou Wommack, and Michael Wommack, Plaintiffs,

v.

UNITED STATES FIRE INSURANCE COMPANY, Incorporated, Defendants.

No. F-70-C-24.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

March 8, 1971.

Putman, Davis & Bassett, Fayetteville, Ark., for plaintiffs.

Barber, Henry, Thurman, McCaskill & Amsler, Little Rock, Ark., for defendants.

## OPINION

JOHN E. MILLER, Senior District Judge, Sitting by Designation.

This is a declaratory judgment action commenced September 8, 1970, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, by Richard L. Wommack, Mary Lou Wommack and Michael Wommack, seeking a declaration that a Professional Comprehensive Personal Catastrophe Liability Policy issued by defendant, United States Fire Insurance Company, Inc., provides coverage to the plaintiff Richard L. Wommack to pay such part of any judgment rendered against plaintiffs in pending personal injury actions as exceeds the coverage provided by any other available insurance.

On September 25, 1970, the defendant filed its answer admitting issuance of the policy in question, but denying any obligation to pay under the terms of the policy until the underlying limits set forth in the policy have been paid. On November 23, 1970, with permission of the court, the defendant filed an amendment to its answer in which it alleged that plaintiff Richard Wommack made a material misrepresentation in his application in failing to note ownership of the 1965 Mustang involved in the accident which brought about the present action, and that defendant was not liable because of such misrepresentation.

The court has jurisdiction because of diversity of citizenship and the amount in controversy, 28 U.S.C. § 1332. The plaintiffs are citizens and residents of Arkansas. The defendant is a corporation chartered under the laws of a state other than Arkansas and has its principal place of business in the State of New York.

On August 11, 1969, the plaintiff Richard L. Wommack, an attorney, submitted an application for a "Million Dollar Professional Policy," in which he stated his name, age, address, and "limits desired, one million dollars"; that he was a practicing attorney in Fayetteville, Arkansas. As to the number, type and garage locations of automobiles owned or hired by him and his wife, he listed the following: one Chevrolet station wagon and one Chevelle sedan garaged at residence. The operators under 25 years of age were ages 19 and 16. He also stated that a liability collision policy was cancelled by State Farm for one chargeable and two nonc013argeable accidents by son, and that he had no losses in amounts greater than $10,000 during the last five years.

On August 15, the defendant, United States Fire Insurance Company, Inc., issued its policy numbered XCL 55 73 59 to Richard L. Wommack at Fayetteville, Arkansas, to be effective from August 11, 1969, until August 11, 1972.

The pertinent sections of the insurance contract provide:

## "INSURING AGREEMENTS

"I.   COVERAGE—

"To pay on behalf of the insured the ultimate net loss in excess of the retained limit which the insured shall become *legally obligated* to pay:

(a) Personal Liability.   As damages because of personal injury or property damage;

(b) Professional Liability.   *   *   *."

*        *        *        *        *        *        *        *        *        *

"III.   LIMIT OF LIABILITY—Retained Limit—

"The company's *liability* as the result of any one occurrence *shall be only* for the ultimate net loss in excess of the insured's retained limit defined as the *greater of*:

(a) the total of the *applicable limits* of the underlying policies *listed in Schedule A* hereof, *and* the applicable limits of any other underlying insurance collectible by the insured; *or*

(b) an amount as stated in Item 4(D) of the Declarations as the result of any one occurrence not covered by the policies so listed or any other insurance;

and then shall not exceed the amount stated in Item 4 of the Declarations with respect to Coverage 1(a)—Personal Liability *   *   *."

(Emphasis supplied.)

(Item 4(D) sets out a retained limit of $250.00.)

*        *        *        *        *        *        *        *        *        *

"Part Two.   This Declarations page with 'Policy Provisions—Part One' completes the below numbered

XCL 55 73 59.

"Name Insured: R. L. Wommack

"Policy Period: 8–11–69 to 8–11–72

\* \* \* \* \* \* \* \* \* \*

"4.  Limit of Liability—as Insuring Agreement III.

(A) Coverage 1(a)—Personal Liability—with respect to any one occurrence ............ $1,000,000.00

(B) Coverage 1(b)—Professional Liability—with respect to any one occurrence ............ $1,000,000.00

(C) Limit in the aggregate during the policy period under Coverage 1(b) ............ $1,000,000.00

(D) Retained limit ............ $      250.00"

\* \* \* \* \* \* \* \* \* \*

ML 7.0.13            "ENDORSEMENT

"It is agreed that Condition M. Maintenance of Underlying Insurance is amended to read as follows:

"It is warranted by the insured that the underlying limits of liability for comprehensive personal liability, automobile liability and professional liability listed in Schedule A shall be maintained in force as collective insurance during the currency of this policy. In the event of failure by the insured so to maintain such limits, or to meet all conditions and warranties subsequent to loss under policies providing these limits, the insurance afforded by this policy shall apply in the same manner it would have applied had such limits been so maintained in force."

\* \* \* \* \* \* \* \* \* \*

"Schedule A—Schedule of Underlying Policies

| "Carrier, Policy Number & Period | Type of Policy | Applicable Limits |
|---|---|---|
| (b)  See End. ML 7.0.13 | Automobile Liability | Bodily Injury Liability $100,000.00 each person $300,000.00 each occurrence |
| | | Property Damage Liability $10,000.00 each occurrence" |

———◆———

Plaintiffs have filed a motion for summary judgment supported by the affidavit of Richard L. Wommack, and defendant has filed a cross motion under Rule 56, Fed.R.Civ.P.

An examination of the pleadings and exhibits thereto, together with the affidavit, establishes that there is no genuine issue as to any material fact. The parties admit that there is no genuine

issue of any material fact, and thus the case is one for disposition on the motions now before the court.

On April 17, 1970, the plaintiff Michael L. Wommack, son of the other plaintiffs, was involved in a multi-car accident near Springdale, Arkansas. Michael L. Wommack was under the age of eighteen at the time of the accident. On the 28th of April, 1970, the plaintiffs were named defendants in three actions arising out of the accident heretofore mentioned. The cases are Nos. F–70–C–6, F–70–C–7 and F–70–C–8, Fayetteville Division. The plaintiffs herein alleged the negligence of Michael L. Womack and the liability of Richard L. Wommack and Mary Lou Wommack by virtue of statutorily imputed negligence under Ark.Stat.Ann. § 75–315 (1969 Supp.).[1]

In the affidavit of plaintiff Richard L. Wommack, attached as Exhibit A to plaintiffs' motion for summary judgment, Mr. Wommack stated:

(a) On April 25, 1969, the Northwestern National Casualty Company issued its policy naming him as the insured and designating a 1969 Chevrolet 8-cylinder automobile as the owned automobile. The bodily injury liability limits in that policy are $100,000 for each person and $300,000 for each occurrence. The policy was in force and effect at the time of the accident.

(b) Also, there was a Northwestern National Casualty Company automobile liability policy in effect at the time of the accident which covered a 1970 Chevrolet Monte Carlo, used chiefly by his wife, and a 1963 Chevrolet convertible used chiefly by his son Michael. The policy limits were $100,000/$300,000 for both cars.

(c) The three cars above mentioned were the only ones operated out of his household.

(d) Also, on April 25, 1969, the Northwestern National Casualty Company issued its policy DA 425–Y–10828S referred to as the small policy, in which he was named insured and designated a 1965 Ford Mustang 2-door hardtop as the insured automobile. The bodily injury liability limits on this policy were $10,000 for each person and $20,000 for each accident. This automobile was the one which was involved in the accident of April 18, 1970, for which he and the other plaintiffs have been sued. He is the registered owner of the Mustang and the insurer has acknowledged liability on that policy in the event judgments are rendered against him arising out of the accident of April 18, 1970.

(e) The Mustang, while registered in his name, was used almost exclusively by his son Rick, who does not live in the family home and who usually kept the Mustang at his apartment when not actually using it. However, on the night of the accident the Mustang was driven by his son Michael, who is a resident of his household.

The parties have submitted briefs in support of their respective contentions but have cited no decisions in which the specified questions involved herein have been discussed or decided, and the court,

---

1. Ark.Stat.Ann. § 75–315 (1969 Supp.) provides in part:

"(a) The original application of any person under the age of eighteen (18) years for an instruction permit or operator's license shall be signed and verified before a person authorized to administer oaths by both the father and mother of applicant, if both are living and have custody of him, * * *.

"(b) Any negligence or wilful misconduct of a minor under the age of eighteen (18) years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or wilful misconduct.

\* \* \* \* \*

"(d) The provisions of this Section shall apply in all civil actions, including but not limited to both actions on behalf of and actions against the person or persons required or authorized by Subsection (a) of this Section to sign the application in the manner therein provided."

after a rather extensive search, has found none. The questions herein involved are novel and peculiar to this type of insurance.

Plaintiffs contend alternatively that the policy unambiguously affords them coverage as excess insurance over the underlying automobile liability insurance contract providing minimum limits, or that, if the policy does not read unambiguously in their favor, there are ambiguities in Insuring Agreement III and in Endorsement ML 7.0.13 which must be resolved in their favor. Either way, according to plaintiffs, the policy issued by defendant provides excess coverage above the limits provided by the only automobile liability policy which covers the occurrence.

The defendant contends that the question for determination is the amount of coverage afforded by the policy issued by it; that the policy is a Professional Comprehensive Personal Catastrophe Liability Policy, in which defendant agreed to pay up to the policy limit of one million dollars for any loss suffered by plaintiff in excess of the limits of the underlying insurance policies set out in Schedule A of the policy. Alternatively, and by amendment to its answer, the defendant alleged that the plaintiff Richard L. Wommack made misrepresentation or concealment of facts in his application in answer to question five, "number, type and garage locations of automobiles owned or hired by you and your wife," in that he was the owner of at least three automobiles and possibly four.

The substantive law of Arkansas must be applied and followed. Arkansas law relative to the construction of insurance contracts differs in no respect from that almost universally applied, Jefferson Insurance Co. of Pine Bluff, Ark. v. Hirchert, (8 Cir. 1960) 281 F.2d 396, in that the contract will, in the event of an ambiguity, generally be construed strongly against the company and liberally in favor of the insured. Securities and Exchange Comm. v. Arkansas Loan & Thrift Corp., (W.D.Ark.1969) 297 F.Supp. 73; Glens Falls Group Ins. Co. v. Simpson,

(1969) 246 Ark. 640, 439 S.W.2d 292; M.F.A. Mutual Ins. Co. v. McKinley, (1968) 245 Ark. 326, 432 S.W.2d 484. A concomitant rule of construction is that words of exception or limitation in an insurance contract must be construed strictly against the insurer. Watts v. Minnesota Mutual Life Ins. Co., (1966) 240 Ark. 72, 402 S.W.2d 111; Washington Fire & Marine Ins. Co. v. Ryburn, (1968) 228 Ark. 930, 311 S.W.2d 302. These general rules do not mean, however, that the courts, under the guise of construction, may strain the meaning of ordinary terms in an insurance contract to create an otherwise nonexistent ambiguity. Peacock & Peacock, Inc., v. Stuyvesant Ins. Co., (8 Cir. 1964) 332 F.2d 499; Securities and Exchange Comm. v. Arkansas Loan & Thrift Corp., supra.

A policy of insurance, like any other contract, must be construed reasonably and fairly to ascertain and carry out the intention of the parties. A common-sense approach should be used, and generally the words employed in the policy are to be understood in their ordinary sense.

Plaintiffs argue that Insuring Agreement III(a) refers to alternative underlying insurance that may be maintained by the insured and considered in determining the point at which defendant's coverage begins. If a scheduled policy does not cover the casualty, then its limits would not be considered in determining the "applicable limits," and the parties would then turn to any unscheduled insurance maintained by the insured which is applicable to the casualty. If such insurance exists as collectible insurance, then the greater of the total limits of such insurance would constitute the "retained limit." If no unscheduled applicable insurance were maintained by the insured, subsection (b) of the Insuring Agreement III designates $250.00 as the retained limit or lowest point at which defendant's coverage begins. The court does not agree with plaintiffs' contention.

The alternative underlying insurance referred to in Section III(a) of the Insuring Agreement is preceded by the conjunction "and" which is defined in Webster's Third International Dictionary as meaning "along with or together with." The defendant was merely trying to avail itself of any coverage available to the insured above the specified underlying coverage if it were available to the insured.

Subsection (b) is not inconsistent with subsection (a) because no situation is present to require the court to apply (a) and (b) in the same case. The language preceding subsections (a) and (b) clearly states that the greater of the two is to apply, and they are separated by the disjunctive word "or" which implies that one would serve to the exclusion of the other. The retained limit under (a) is greater regardless of whose theory of coverage and dollar limits is used. Subsection (b) is limited to $250.00. If you follow the plaintiffs' theory of subsection (a)—that the applicable limits apply to any other insurance policy—it would be $10,000/$20,000 coverage. The essence of this is that subsection (b) never need be read in this case because (a) obviously applies to this action.

The plaintiffs also argue that Endorsement ML 7.0.13, as referred to in Schedule A, is an attempt by the defendant to limit coverage to sums in excess of the limits reflected by Schedule A, even if no underlying insurance is maintained. This is essentially correct. They reason that where at least one underlying policy providing the required limits is in effect at the time of any occurrence and as long thereafter as may be pertinent, the endorsement has been fully complied with according to its terms. The language of the endorsement does not permit this interpretation since it provides that if such coverage is not maintained, the coverage still remains the same, At this point it is clear that the endorsement, though not requiring more than substantial compliance, does provide for a uniform benefit starting at the point where the underlying coverage in Schedule A is exhausted whether the insured has the warranted underlying coverage or not.

Plaintiffs further argue that there is a double meaning to the phrase "applicable limits" as used in Insuring Agreement III. They feel it is not clear whether "applicable limits" refers to insurance policies which are applicable to a particular casualty or simply dollar limits of liability coverage reflected in Schedule A. The court does not believe there is any ambiguity in the phrase "applicable limits" as used in the policy that is not resolved by the words "of the underlying policies listed in Schedule A." It is clear that the "applicable limits" in an automobile liability situation are $100,000/$300,000.

The last argument that is raised by the plaintiffs relates to an alleged ambiguity within the Endorsement ML 7.0.13. It is contended that the endorsement is ambiguous in that it does not specify that there is "no liability for losses incurred by the insured below the limits in Schedule A." The plaintiff further states that there is no way of telling exactly what is required in the way of underlying coverage for compliance with the endorsement. The endorsement specifically refers the matter of underlying limits to that portion of Schedule A covering the insured event (i. e., automobile liability, $100,000 per person, $300,000 per accident, $10,000 property damage). The court is of the opinion that the endosement is quite clear in that Schedule A sets up the underlying limits and that the endorsement requires that if one fails to procure such limits "the insurance afforded by this policy shall apply in the same manner it would have applied had such limits been maintained in force." Coverage under the plain and ordinary meaning of the wording with reference to Schedule A specifically requires $100,000/$300,000 coverage in the event of automobile liability as the "applicable limit" of underlying insurance required by Endorsement ML 7.0.13.

The defendant contends on its brief in support of its motion that the provisions

of the policy herein involved are not ambiguous; that an insurance policy should be construed in a manner which will carry out the intentions of the parties like any other contract; and that "a common-sense approach should be used and generally the words employed are to be understood in their ordinary sense." In support of this, the cases of State Farm Mutual Ins. Co. v. Pennington, (E.D.Ark.1963) 215 F.Supp. 784; Securities & Exchange Comm. v. Arkansas Loan & Thrift Corp., (W.D.Ark.1969) 297 F.Supp. 73, are cited. In the latter, this court at page 80 said:

> "The rule of strict construction does not mean that the courts may strain the construction of ordinary terms in the contract to create an otherwise nonexistent ambiguity."

The defendant argues first that if the policy issued by defendant is construed in accordance with the applicable rules as hereinbefore set forth that no ambiguity exists.

Secondly, that "Agreement III—LIMIT OF LIABILITY—Retained Limit," is clear and unambiguous in its meaning. The word "applicable" clearly pertains only to the word "limits" as policy amounts are not set out in this section but only in Schedule A under the heading of "Automobile Liability." Schedule A sets up three applicable limits which could apply to certain insured events. They are $100,000 per person, $300,000 per accident, and $10,000 property damage liability. The insurer further argues that the logical interpretation of this section of the policy is that since there are three possible *limits* at which the company will pay up to one million dollars over and above the underlying insurance, the term "applicable" simply modifies the word "limits." The company also joints out that the wording in Agreement III(a) provides for "the total of the applicable limits of the underlying policies listed in Schedule A hereof, *and* the applicable limits of any other underlying insurance * * *." (Emphasis supplied.)

Thirdly, as to Endorsement ML 7.0.13, the argument of defendant is that "it is in the form of a warranty by the insured that he will maintain the underlying insurance in the amounts stated on Schedule A" (which provides for $100,000/$300,000/$10,000 coverage). According to the defendant, the endorsement further provides that if no underlying coverage is maintained, then the insured does not lose his coverage, but the coverage still includes only such amount as in excess of the limits of the policy set out in Schedule A.

Fourthly, that plaintiff, Richard L. Wommack, made a misrepresentation or concealment of facts in his application where, in response to question 5, "number, type, and garage locations of automobiles owned or hired by you and your wife," in that he was the owner of four automobiles as listed in the affidavit.

The last contention of defendant as to the number and kinds of automobiles owned by Mr. Wommack is supported factually by his affidavit as set forth herein in the statement of facts. However, in view of the conclusion reached, it seems unnecessary to consider the effect of the alleged misrepresentation of fact.

The language of the policy clearly sets forth the essential terms and limits of the contract, and in view of the undisputed facts and unambiguous provisions of the policy, the court is convinced that the plaintiff Richard L. Wommack fully understood the applicability of the policy, and therefore is of the opinion that the motion of defendant should be granted and that it has no liability for payment of any sums in satisfaction of any judgment rendered in the suits pending against the plaintiffs until such times as the plaintiff Richard Wommack has incurred a net loss in excess of $100,000 person, $300,000 per accident, and $10,000 property damage, and that the motion of plaintiffs should be overruled and denied.

An order is being entered today in accordance with the above and adjudging costs against the plaintiffs.