**Richard LIENEMANN, as Executor of the Estate of Patricia A. Lienemann, Deceased, and Richard Lienemann, Individually, Plaintiffs,**

**v.**

**Steffanie D. KING, Charles Naekel, Cooper Communities, Inc., The Simmons Group Realtors, Shelter Mutual Insurance Company (Shelter Insurance Companies) and State Farm Fire and Casualty Company (State Farm Insurance Companies), Defendants.**

No. 93–5031.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Sept. 17, 1993.

Raymond C. Smith, Fayetteville, AR, Howard Miller, Tulsa, OK, for plaintiffs.

Robert L. Jones, Jr., Jones, Gilbreath, Jackson & Moll, Fort Smith, AR, and Walter B. Cox, Davis, Cox & Wright, Fayetteville, AR, for Naekel, Cooper Communities and Shelter Mut. Ins. Co.

Marshall Dale Evans, Pearson, Evans & Chadwick, and Gary V. Weeks, Bassett Law Firm, Fayetteville, AR, for Steffanie King.

Robert J. Lambert, Roy & Lambert, Springdale, AR, for State Farm Fire & Cas. Co.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On April 3, 1992, Richard Lienemann, and his wife, Patricia, were passengers in an automobile driven by defendant, Charles Naekel, on State Highway 12 East of Rogers, Arkansas. At the time, Mr. Naekel was an employee of defendant, Cooper Communities, Inc., acting within the scope of his employment. As the Naekel vehicle was negotiating a curve in the highway, another motor vehicle operated by defendant, Steffanie D. King, crossed the center line and struck the Naekel vehicle. Patricia Lienemann was killed in the accident, and her husband suffered injuries.

Mr. Lienemann, as executor of his deceased wife's estate, and in his own behalf, filed suit against defendants, King, Naekel, and Cooper Communities, Inc., and insurance carriers, Shelter Mutual Insurance Company, and State Farm Fire and Casualty Company. The insurance companies were made parties because of certain uninsured or underinsured coverage they provided in policies issued to various of the persons or entities involved.

On the morning of September 13, 1993, immediately before jury selection was to commence, the parties advised the court that they had reached a complete settlement of all claims. The jury was excused, and the court had the parties announce, on the record, the details of the settlement which had been reached.

It was announced that Farmers Insurance Company, the insurance carrier for the King vehicle, had agreed to pay its policy limits of $25,000 to the estate of Patricia Lienemann for the injuries suffered by her resulting in her death; Shelter Insurance Company, the carrier for the Naekel vehicle, had agreed to pay to her estate $25,000, representing its limits of underinsured coverage; and State Farm Fire and Casualty Company, insurer for a personal vehicle owned by Richard and Patricia Lienemann, agreed to pay her estate for her death the sum of $50,000, also representing underinsured motorist coverage.[1]

The attorney for the plaintiffs and the attorney for State Farm also agreed, as shown by a copy of the policy of insurance issued by State Farm, that the underinsured motorist limits of that policy are $100,000 for each person and $300,000 for each accident. State Farm had refused to pay more than the $50,000 it had agreed to pay because it

---

1. It was also agreed that certain sums would be paid by some of the insurance carriers to Richard Lienemann for injuries that he suffered, but such payments and the amounts of them are not relevant to the issues before the court.

took the position that certain provisions of the policy of insurance, to be described more particularly hereinafter, precluded the plaintiffs from recovering from it more than $50,000 for the death of Mrs. Lienemann. The attorneys agreed that the court could decide that issue on briefs submitted by the party in respect to a motion for partial summary judgment previously filed by State Farm raising that issue.

The State Farm policy contains two "anti-stacking" provisions which it argues preclude plaintiffs from recovering more than the $50,000 already paid. Section III of the policy (Coverage U) provides uninsured and underinsured motor vehicle coverage to these insureds the Lienemanns. A provision under the heading "Limits of Liability", provides in pertinent part:

Subject to the above, the most we pay any one insured is the lesser of:

(1) the difference between the 'each person' limit of liability of this coverage and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury; or

(2) the difference between the amount of the insured's damages for bodily injury and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury.

Additionally, the policy contains rather standard "other insurance" language applicable to uninsured and underinsured motorist coverage as follows:

3. If the insured sustains bodily injury while occupying a vehicle which is not your car, this coverage applies:

a. as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage; but

b. only in the amount by which it exceeds the primary coverage.

■■ Of course, the law clearly is that a policy of insurance is nothing more than a contract between the insurance carrier and its insured, and is to be governed by the ordinary rules of interpretation of contracts. *Couch on Insurance*, § 45:294 at 620, and

*Perkins v. Clinton State Bank*, 593 F.2d 327 (8th Cir.1979). A common sense approach should be used, and generally the words employed in the policy are to be understood in their ordinary sense. *Wommack v. United States Fire Ins. Co.*, 323 F.Supp. 981 (W.D.Ark.1971).

"An insured may contract with its insurer upon whatever terms both may agree, provided such terms are not contrary to specific statutory provisions." *Henderson v. Universal Underwriters Ins. Co.*, 768 F.Supp. 688 (E.D.Ark.1991), *citing Gill v. General American Life Ins. Co.*, 434 F.2d 1057 (8th Cir. 1970), and *Aetna Ins. Co. v. Smith*, 263 Ark. 849, 852, 568 S.W.2d 11, 13 (1978).

■ The law is that where the terms used in an insurance policy are plain and unambiguous, the court will not use a forced construction of the terms of an insurance contract where no ambiguity exists, and must apply the law to the unambiguous terms. *Benton State Bank v. Hartford Acc. & Indem. Co.*, 452 F.2d 5 (8th Cir.1971); *Peacock & Peacock, Inc. v. Stuyvesant Ins. Co.*, 332 F.2d 499 (8th Cir.1964); *Hardware Dealers Mutual Fire Ins. Co. v. Holcomb*, 302 F.Supp. 286 (W.D.Ark.1969); *Southern Farm Bureau Cas. Ins. Co. v. Williams*, 260 Ark. 659, 543 S.W.2d 467 (1976); and *Arkansas Blue Cross–Blue Shield, Inc. v. Tompkins*, 256 Ark. 370, 507 S.W.2d 509 (1974).

■ Using these rules of law, it is obvious that the terms of the insurance policy quoted above, in relatively clear language as insurance policy language goes, precludes the stacking of the insurance coverages available in this case.

The effect of the "other insurance" clause is that State Farm provides a maximum limit of $75,000 of underinsured motorist coverage for the accident which killed Mrs. Lienemann. That is true because that is exactly what this provision says. It, in effect, says that the coverage that it provides will be "excess" to any provided by the insurance carrier providing coverage on the automobile in which the decedent was riding and the limits of such coverage will be "only in the amount by which it exceeds the primary coverage"—in other words, $75,000.

However, the other provisions quoted above, specifically, and rather unambiguously, set forth the amount of underinsured coverage payment that will be made to any one insured, and that amount is the difference between the "each person" limit of liability of this coverage (*i.e.* $100,000) and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury (*i.e.* $50,-000) paid by Farmers and Shelter.

Thus, unless the insurance policy was issued contrary to applicable law, State Farm has paid to the estate of Patricia Lienemann all that it agreed to pay and all that the estate was entitled to recover under the agreement that the insureds made with the insurance carrier.

In this respect, plaintiffs, through their counsel, contend in their brief that the above quoted provisions of the insurance contract should not be construed as the court has done above, but it is not clear on what basis they make that contention. They cite few cases in their three-page brief, none of which appear to be particularly on point. They simply seem to contend that the court should apply Arkansas law, and in doing so, should declare that the "other insurance" provisions of the policy "should be declared void as against Arkansas public policy". In making that contention, they cite no Arkansas cases or statutes which would require or support that result, although there is an Arkansas statute, and there are cases construing it, which would not only support that argument but mandate that result if Arkansas law is applied.

As pointed out by Judge Stephen Reasoner in *Harrison v. Universal Underwriters Ins. Co.*, 768 F.Supp. 688 (E.D.Ark.1991), in 1991 the Arkansas General Assembly passed an amendment to the Arkansas statute which requires the provision of uninsured motor coverage by insurance carriers (Ark.Code Ann. § 23–89–209), intended to clear up certain ambiguities which had existed in the old law in respect to whether "anti-stacking" provisions were valid. The statute now reads, in pertinent part:

Coverage of the insured pursuant to underinsured motorist coverage shall not be reduced by the tortfeasor's insurance coverage except to the extent that the injured party would receive compensation in excess of his damages.

*See also* a recent case of the Arkansas Supreme Court so holding, *Shepherd v. State Auto Property & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993).

That clear pronouncement of Arkansas public policy is contrasted by the public policy of Kansas as set forth in its applicable uninsured/underinsured motorist statute, K.S.A. 40–284. That statute clearly not only authorizes but seems to mandate "anti-stacking" provisions in policies of insurance issued in Kansas as follows:

40–284. Uninsured motorist coverage and underinsured motorist coverage; rejection; antistacking provision; exclusions or limitations of coverage; subrogation rights of underinsured motorist coverage insurer.

\* \* \* \* \* \*

(b) Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.

\* \* \* \* \* \*

(d) Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident.

The Kansas courts, construing these provisions have held that insurance policies may condition, limit, or dilute underinsured motorist coverage since such limitations are expressly allowed or required by statute. *Ball*

*v. Midwestern Ins. Co.*, 250 Kan. 738, 829 P.2d 897 (1992); *State Farm Mut. Auto Ins. Co. v. Cummings*, 13 Kan.App.2d 630, 778 P.2d 370 (1989). The *Cummings* court states:

> The statute in question [K.S.A. 40–284(b) ] is unambiguous and plainly indicates that the underinsured motorist coverage enables the insured to recover from his underinsured motorist carrier damages 'to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.' In other words, if the underinsured motorist coverage in the policy covering appellants exceeds the limits of the liability coverage in effect on the driver of the other vehicle, resort may be had to underinsured motorist coverage. In this case, however, both limits were the same.

*Cummings*, 778 P.2d at 376–377.

Thus, the determinative issue in this case is whether Arkansas law or Kansas law applies. Plaintiff contends that the court should apply Arkansas law and thus void the anti-stacking provisions but, once again, no authority is cited for this contention. The one case cited by plaintiff on this question, *Schlemmer v. Fireman's Ins. Co.*, 292 Ark. 344, 730 S.W.2d 217 (1987) is not on point since it is a tort case in which the Arkansas Supreme Court was determining whether to apply Arkansas law or Tennessee law in respect to the validity of the Arkansas guest statute which was in effect at that time.

Our case is not a tort case. It is a case in which the court must construe a contract of insurance which the parties entered into. Since this case is a diversity case, the court must apply Arkansas choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Whirlpool Corp. v. Ritter*, 929 F.2d 1318 (8th Cir.1991).

State Farm urges that the court should apply *Wallis* (not *Wallace* as indicated in defendants' brief) *v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977) and Professor Leflar's five choice-influencing considerations. However, in making such contention, and in discussing the application of it, defendant appears to fail to distinguish

between the nature of the *Wallis* case, which was an action sounding in tort, not contract as is the case here. Although the matter before this court arose out of an automobile accident, the sole issue is the interpretation of the policy of insurance. Thus, the *Wallis* rationale is not applicable.

As the Court of Appeals for this circuit said in *Whirlpool Corp.*:

> Had the Arkansas Supreme Court wished to replace the traditional choice of law rules in contract actions with Professor Leflar's test, we would expect it to have done so explicitly as it did for the tort actions in *Wallis*.

> \*  \*  \*  \*  \*  \*

> In actions *ex contractu*, Arkansas courts traditionally considered three different bases for making choice of law determinations: 'the law of the state in which the contract was made; the law of the state where the contract is performed; and the law of the state which the parties intend to govern the contract, provided that state has a substantial connection with the contract.' *Tiffany Indus. v. Commercial Grain Bin Co.*, 714 F.2d 799, 801 (8th Cir.1983) (per curiam) (*citing Cooper v. Cherokee Village Dev. Co.*, 236 Ark. 37, 43, 364 S.W.2d 158, 161 (1963)). More recently, however, Arkansas courts have begun applying the 'significant contracts' test. *Id.* (*citing Standard Leasing [Corp. v. Schmidt Aviation, Inc.]*, 264 Ark. [851] at 855–56, 576 S.W.2d [181] at 184 [ (1979) ] ); *Bell v. Kansas City Fire & Marine Ins. Co.*, 616 F.Supp. 1305, 1307 (W.D.Ark. 1985) (citations omitted). This test requires an examination of 'the nature and quantity of each state's "contacts" with the transaction at issue.' *Snow v. Admiral Ins. Co.*, 612 F.Supp. 206, 209 (W.D.Ark. 1985).

*Whirlpool Corp.*, 929 F.2d at 1321.

In this respect, § 193 of *Restatement 2d Conflict of Laws* says:

> The validity of a contract of fire, surety, or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy unless with respect to the particular issue, some

other state has a more significant relationship under the principal state in § 6 to the transaction and the parties in which event the local law of the other state will be applied.

An annotation in 83 ALR 3d 321, *Automobile Liability Policy: Choice of Law as to Validity of "Other Insurance" Clause of Uninsured Motorist Coverage*, discusses the issue presently before the court, and, in respect to the *Restatement* section quoted above, says:

> The restatement goes on to point out that in the case of an automobile, it is generally known beforehand where the vehicle will be garaged during the term of the policy, the implication being that this, usually, will be a significant consideration in determining where the principal risk is located.

*Id.* at *323*, citing Restatement 2d Conflict of Laws, *§ 193 Comment B.*

In this case, there is no question, in the view of this court, but that Kansas law should be applied to this Kansas insurance policy. At the time the policy of insurance was issued, and at the time of the accident, Mr. and Mrs. Lienemann resided in Kansas. The policy of insurance was issued to cover an automobile to be garaged in Kansas, and presumably to be driven there. That was, in the terms of the *Restatement,* the place "which the parties understood was to be the principal location of the insured risk during the term of the policy."

As the Court of Appeals pointed out in *Whirlpool, supra, quoting* from a case from this court, the test requires an examination of "the nature and quantity of each state's 'contacts' with the transaction at issue." *Whirlpool, supra, citing Snow v. Admiral Ins. Co.,* 612 F.Supp. 206, 209 (W.D.Ark. 1985). When the "nature and quantity" of the Kansas contacts are compared with the very minimal contact that the policy and its

insureds had with Arkansas, there is no question but that those in Kansas are far greater. In fact, the only contact that Arkansas had with the insurance contract is that it covered, under the underinsured motorist coverage issued on an automobile not involved in this accident, Mr. and Mrs. Lienemann while they were riding in an automobile owned, operated and insured by another individual when it was hit by another vehicle in Arkansas.

Those Arkansas contacts, to say the least, are minimal, and the court does not believe that there is any reasonable basis for the court to conclude that Arkansas law should be applied in construing the policy provisions. Kansas clearly had a more significant relationship with the contract of insurance issued there to its citizens which was, as the express terms of the insurance policy said "provided in accordance with Kansas law." *See* State Farm policy, ¶ 7, p. 21.

Having decided that Kansas law applies, the issue before the court is decided.[2] Kansas law not only authorizes "anti-stacking" provisions such as those contained in the policy at issue, it appears to mandate them. Since that is the case, the court, considering this matter in the nature of a declaratory judgment action, finds and declares that State Farm Insurance Company has, by agreeing to pay $50,000 for the death of Patricia Lienemann, will, when such amount is paid, have fulfilled its obligations imposed by the contract of insurance which is the subject matter of this controversy.

### ORDER

On this 17th day of September, 1993, for the reasons set forth in a memorandum opinion filed contemporaneously herewith, the court finds and declares that State Farm Insurance Company will, when the $50,000 in coverage discussed in the memorandum opin-

---

**2.** The court has not overlooked an additional contention by plaintiff that State Farm has somehow waived its right to apply the anti-stacking provision of its insurance policy because it waived its right to subrogation against Steffanie King, *citing* K.S.A. 40–284(f). The court has concluded that the argument is meritless. That provision of Kansas law simply provides that an insurance carrier paying a loss has a subrogation right against the tortfeasor but may waive that right if certain acts are not taken within a prescribed period. It is true that State Farm has no right to proceed to enforce its subrogation rights against Steffanie King, but that has nothing to do with whether it has a right to apply the terms of its insurance policy in respect to the amount of the loss that will be paid under the circumstances of this case.

ion is paid, have fulfilled all obligations and duties owed to Richard A. and Patricia, Lienemann imposed by its policy of insurance issued to them under Policy No. 273 8943–A27–16B for the policy period from April 1, 1992, to July 27, 1992.

An order of the court formalizing the settlement agreement between the parties having earlier been entered, this matter is now terminated.

IT IS SO ORDERED.