7 F.3d 238
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
CENTENNIAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
Richard NAYLOR, Defendant-Appellant.
 No. 93-1104.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 10, 1993.
Decided Sept. 28, 1993.
 
 Before BAUER, Chief Circuit Judge, and EASTERBROOK and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Centennial Insurance Co. (Centennial) brought this diversity action under 28 U.S.C. § 1332(a) seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Centennial asked the district court to declare that Centennial was required to pay on behalf of the insured, Robert Krutek, only damages in excess of $320,000.00 that may result from a personal injury suit instituted by Richard Naylor. The district court granted Centennial's motion for summary judgment. Richard Naylor, but not Robert Krutek, appealed.
 
 
 2
 The facts of this case are succinctly set forth in Chief Judge Moran's Memorandum and Order of December 14, 1992. A copy of that document is appended to this order.
 
 
 3
 Mr. Naylor, the plaintiff in the underlying suit, claims that the policy language mandates that Centennial is liable for any damages in excess of $20,000.00. This contention is meritless. We agree with the district court that the language of the policy is clear on its face and, for the reasons set forth in the district court's Memorandum and Order, we affirm.
 
 
 4
 For the sake of completeness, we address briefly two arguments raised by Mr. Naylor but not directly addressed by the district court. Mr. Naylor first asserts that the "Other Insurance" provision[1] is a promise to provide coverage in excess of the amount recoverable from the primary insurer. His reliance on this provision is misplaced. This provision is not part of the coverage grant and therefore cannot increase nor decrease the coverage set forth in the Insuring Agreements. Furthermore, Mr. Naylor's reliance on Donald B. MacNeal, Inc. v. Interstate Fire & Casualty Co., 477 N.E.2d 1322 (Ill.App.1985), misses the mark. The MacNeal court addressed a coverage grant that described the insurer's liability as " 'in excess of (1) The amount recoverable under underlying insurance....' " Id. at 1324 (emphasis added). No such language appears in the Insuring Agreements of the Centennial policy and, consequently, MacNeal is wholly inapplicable to this case.
 
 
 5
 Mr. Naylor also argues that, because this occurrence is not "covered" by any underlying policy, Insuring Agreement A[2] provides coverage for losses in excess of $250.00. This provision applies, however, to risks which are not addressed by the underlying insurance. The occurrence at issue, an automobile accident, is a risk anticipated by the Aetna vehicle policy listed in Schedule A; the requisite insurance simply was not properly maintained by the insured.
 
 
 6
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 7
 AFFIRMED.
 
 APPENDIX
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DISTRICT
 
 8
 Centennial Insurance Company, Plaintiff,
 
 
 9
 vs.
 
 
 10
 Robert Krutek, an individual, and Richard Naylor, an
 
 
 11
 individual, Defendants.
 
 No. 92 C 3710
 
 12
 Dec. 14, 1992.
 
 MEMORANDUM AND ORDER
 
 13
 Plaintiff Centennial Insurance Company (Centennial) brings this action seeking a declaratory judgment to determine the extent of its liability under the personal comprehensive policy (the Centennial umbrella policy) which it issued to Donald Krutek and under which defendant Robert Krutek (Krutek) is an insured. Plaintiff seeks a declaration by this court that the Centennial umbrella policy does not come into effect unless and until Krutek becomes legally obligated to pay damages alleged in a lawsuit between Krutek and defendant Richard Naylor (Naylor) in an amount exceeding $320,000. Before us now is plaintiff's motion and defendants' cross-motion[1] for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Federal subject matter jurisdiction is based on 28 U.S.C. § 1332, the parties being of diverse citizenship and the controversy exceeding $50,000. For the reasons stated below, Centennial's motion is granted.
 
 FACTS
 
 14
 In assessing a motion for summary judgment we examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," resolving all doubts in favor of the non-movant. Fed.R.Civ.P. 56(c). For that purpose we are "not required to draw every conceivable inference from the record--only those inferences that are reasonable," in favor of the non-movant. Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991).
 
 
 15
 On November 6, 1991, Naylor filed a complaint in the Circuit Court of Lake County, Illinois, against Krutek, seeking damages for bodily injuries allegedly sustained in an automobile collision with Krutek. At the time of the collision there was in effect a Country Companies automobile insurance policy with bodily injury liability limits of $20,000. The only other policy in effect was the subject Centennial personal umbrella policy.
 
 
 16
 Centennial, a New York insurance corporation, had issued a personal comprehensive umbrella policy to Krutek's father, Donald Krutek. Krutek qualified as an insured under the Centennial umbrella policy because he is the son of Donald Krutek and resided with his parents at the time of the accident. The parties now seek a declaratory judgment which would determine Centennial's obligations under its umbrella policy. The important provisions of the Centennial umbrella policy are included below.
 
 
 17
 Insuring Agreement "A" of the Centennial umbrella policy, in relevant part, reads as follows:
 
 
 18
 The company agrees to pay on behalf of the insured the ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay as damages because of personal injury or property damages resulting from occurrences during the policy period.
 
 
 19
 With respect to any occurrence not covered by the underlying policy(ies) or insurance described in Schedule A hereof or any other underlying insurance collectible by the insured but covered by the terms and conditions of this policy except for the amount of retained limits specified in Item (2) of the Insuring Agreement E, the company shall defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; but the company may make such investigation, negotiation, and settlement of any claim or suit as it deems expedient.
 
 
 20
 Insuring Agreement "E" of the Centennial umbrella policy, as amended by amendatory endorsement 2Q4312D, defines the term "retained limit" as follows:
 
 
 21
 E. LIMIT OF LIABILITY--RETAINED LIMIT.
 
 
 22
 The company's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of (1) the total of the applicable limit(s) of the underlying policy(ies) listed or insurance described in Schedule A hereof, and the applicable limit(s) of any other underlying insurance collectible by the insured; or (2) the amount stated in Item 3(b) of the Declarations as the Retained Limit as the result of any one occurrence not covered by the said policy(ies) or Insurance; and then up to an amount not exceeding the amount stated in Item 3(a) of the Declarations as the Policy Limit as the result of any one occurrence; provided that the company shall not be required to assume any obligation of any underlying insurer which shall be deemed uncollectible or invalid by reason of bankruptcy or insolvency of such insurer.
 
 
 23
 Schedule A of the Centennial umbrella policy lists an Aetna policy as the underlying vehicle policy, with an applicable liability limit of $300,000.00. Several controlling endorsements that have been attached as exhibits by both parties are also listed on Schedule A.
 
 
 24
 The Centennial umbrella policy contains the following "Maintenance of Underlying Insurance" condition:
 
 
 25
 It is a condition of this insurance that the Underlying Insurance described in Schedule A and renewal or replacements thereof not more restricted, shall be maintained in force as collectible insurance during the currency of this policy. In the event of failure by the insured so to maintain such insurance or to meet all conditions therein, the insurance afforded by this policy shall apply in the same manner it would have applied had such insurance been so maintained in force.
 
 
 26
 Aetna Insurance Company has declined coverage to Krutek since neither he nor his automobile were listed on the policy. Country Companies has acknowledged coverage for Krutek and has agreed that the insurance provided under the policy, up to the $20,000 in liability limits, will be collectible if judgment is rendered against Krutek in the Naylor v. Krutek lawsuit.
 
 DISCUSSION
 
 27
 A grant of summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Renovitch v. Kaufman, 905 F.2d 1040, 1044 (7th Cir.1990). The movant has the burden of demonstrating lack of genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 28
 Where an insurance contract is clear on its face, the plain language of the document controls and the agreement must be enforced as written. Federal Deposit Insurance Corporation v. Zaborac, 773 F.Supp. 137, 140 (C.D.Ill.1991) (citation omitted) (when words in an insurance contract have a plain and unambiguous meaning, the court may not resort to construction of the contract); Continental Casualty Company v. PPG Industries, Inc., 1989 U.S.Dist.Lexis 10437 (N.D.Ill. August 31, 1989); Dora Township v. Indiana Insurance Company, 36 Ill.Dec. 341, 342 (1980). Such is the case here, where, after an examination of the complete document, we do not find the policy provisions to be ambiguous or inconsistent. We therefore follow the insurance contract to the letter and conclude that Centennial's policy does not "drop down" to $20,000, but applies only to damages in excess of $320,000.
 
 
 29
 Insuring Agreement A states that the policy applies only in "excess of the retained limit." The term "retained limit" is defined in Insuring Agreement E, as amended by endorsement 2Q4312D, as "the total of the applicable limit(s) of the underlying policy(ies) listed or insurance described in Schedule A hereof, and the applicable limit(s) of any other underlying insurance collectible by the insured."[2]
 
 
 30
 The term "applicable limit" has been interpreted by a majority of courts, including the Seventh Circuit, to mean the type, rather than collectibility, of the policy. United States Fire Insurance Company, Inc. v. Charter Financial Group, Inc., 851 F.2d 957, 961 (7th Cir.1988); Fried v. North River Insurance Company, 710 F.2d 1022, 1026 (4th Cir.1983). According to plaintiff, "applicable limits" refers to the category of coverage and represents the minimum trigger point for coverage. Plaintiff refers us to several cases where courts held that, under policy language similar to that in the Centennial policy, the policy does not come into play until the liability exceeds the applicable limit of scheduled policies (whether or not they are collectible), plus the limits of "collectible" unscheduled insurance. U.S. Fire Ins. Co. v. Charter, 851 F.2d at 961; Fried, 710 F.2d at 1026; Wommack v. United States Fire Insurance Company, 323 F.Supp. 981, 986 (W.D.Ark.1971); State Farm Fire & Casualty Company v. Oliveras, 441 So.2d 175, 177 (Fla.App.1983). We agree with plaintiff that the term "applicable limits" means the amount listed on Schedule A for the respective insurance category or type, irrespective of whether the amount is actually collectible. It follows that this is the trigger point where Centennial's liability kicks in. As plaintiff points out, this interpretation is further supported by the maintenance of underlying insurance condition, which states that in the event of failure by Krutek[3] to maintain the requisite insurance, "the insurance afforded by this policy shall apply in the same manner it would have applied had such insurance been so maintained in force." The condition's presence, in essence, establishes a "uniform benefit starting at the point where the underlying coverage in Schedule A is exhausted whether the insured has the warranted underlying coverage or not." Wommack, 323 F.Supp. at 986. This determination makes sense because the very purpose of umbrella policies is to provide the insured with inexpensive coverage for extraordinary losses above those covered by conventional policies. Fried, 710 F.2d at 1026.
 
 
 31
 Our next step is, therefore, to examine Schedule A to determine the "applicable limit of the underlying policy or insurance described." On Schedule A, the underlying policy is the Aetna vehicle policy with a liability limit of $300,000. Our final step is to add the "other underlying insurance collectible"--the $20,000 automobile insurance collectible by Krutek on his Country Companies policy. The calculated retained limit is therefore the applicable limit of the underlying policy or insurance described ($300,000), plus the other insurance collectible ($20,000), or $320,000.
 
 
 32
 Defendants make several arguments to dispute that calculation of the retained limit. First, defendants maintain that while the applicable policies listed have limits of $300,000, the insurance provided by those policies to Krutek was zero and, therefore, the retained limit is $20,000--the sum of zero plus the $20,000 collectible by Krutek from Country Companies. However, defendants' argument is without merit since nowhere in the retained limit definition does the term "insurance provided" appear; the definition uses the phrase "policy(ies) listed or insurance described." Therefore, in accordance with the language of the definition we look to what is "listed" or "described" on Schedule A and not what actually was provided by the insurance company.
 
 
 33
 Second, defendants argue that plaintiff's interpretation of "applicable limits" is in error. While defendants agree that "applicable limits" refers to the type, not the collectibility, of underlying insurance, they maintain that such an interpretation is reasonable only when Schedule A lists the liability limits for each category of coverage applicable to the incident. In essence, defendants argue that the insurance must be divided into categories such as "property damage liability (per person or per occurrence)" or "bodily injury liability (per person or per occurrence)." We disagree. Schedule A of the Centennial policy lists three types of underlying insurance: dwelling (CPL), vehicle (VEH), and watercraft (WCFT). The applicable category in this case is vehicle coverage, since an automobile accident is the event for which coverage is sought. That policy denotes $300,000 as the liability limit and $300,000 is, therefore, the "applicable limit" for purposes of calculating the retained limit. The fact that the vehicle liability limit applies to combined coverage, and is not divided into property damage and bodily injury liability categories, does not change the fact that "applicable limits" means type and not collectibility.[4]
 
 
 34
 While defendants make several other arguments disputing plaintiff's calculation of the retained limit, we need not address each of those here. We believe the terms of the insurance contract, including the respective definitions and schedules necessary to calculate the retained limit, are clear and therefore we need not delve into defendants' every attempt to defeat the contract's language. Centennial's policy does not apply until defendants' liability exceeds the retained limit which plaintiff has properly calculated to be $320,000.
 
 
 35
 For reasons as above stated, we enter judgment in plaintiff's favor and hold that Centennial is required to indemnify or pay on behalf of Robert Krutek, the ultimate net loss if any in excess of $320,000, but less than $2,000,000[5], for which Krutek may be held liable as damages to Naylor arising out of the pending Naylor v. Krutek lawsuit.
 
 
 36
 /s/ James B. Moran
 
 
 37
 JAMES B. MORAN,
 
 Chief Judge
 
 
 [1]
 E. Other Insurance
 If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder ... the insurance hereunder shall be in excess of, and not contribute with, such other insurance.
 
 
 [2]
 Insuring Agreement A states in pertinent part:
 With respect to any occurrence not covered by the underlying policy(ies) or insurance described in Schedule A hereof or any other underlying insurance collectible by the insured but covered by the terms and conditions of this policy except for the amount of retained limit specified in Item (2) of Insuring Agreement E [$250.00], the company shall defend any suit against the insured....
 
 
 [1]
 Only defendant Naylor has filed a substantive Cross-Motion for Summary Judgment and Memorandum in Support thereof. Defendant Krutek has chosen to adopt Naylor's filings as his own. We will, therefore, refer to the Cross Motion for Summary Judgment and Memorandum filed by Naylor as that of defendants jointly
 
 
 [2]
 To be more precise, "retained limit" is defined as the greater of two amounts, one being that just noted and the other being the calculated amount of $250, which the parties agree is not the "greater" amount. Therefore, the relevant calculation is that mentioned in the text of this opinion
 
 
 [3]
 We note that the Maintenance of Underlying Insurance clause states: "In the event of failure by the insured so to maintain such insurance ... the insurance afforded by this policy shall apply in same manner it would have applied had such insurance been so maintained in force." (Emphasis added). The relevant inquiry is, therefore, whether the insured, Robert Krutek, maintained the necessary coverage and not whether his father carried the scheduled coverage. The Maintenance of Underlying Insurance provision is a condition that must be complied with by each independent insured. See Fried, 710 F.2d at 1026 n. 6; Ridgeway v. Gulf Line Insurance Company, 578 F.2d 1026, 1030 (5th Cir.1978); Oliveras, 441 So.2d at 177-78
 
 
 [4]
 Centennial maintains that the $300,000 limit of liability is intended to be combined single limits and contends that this interpretation is supported by endorsement Q5386A, which states:
 It is a condition of the insurance that should the Insured acquire an automobile during the term of the policy the underlying automobile liability insurance does insure or will insure all automobiles owned or hired by the insured under a long-term lease agreement during the term of the policy for at least the following limits of liability:
 Bodily Injury Liability Property Damage Or Bodily Injury Liability and
 Liability Property Damage Liability of
 Both Combined
$250,000 each person $25,000 each
$500,000 each occurrence occurrence $300,000 each occurrence
 If underlying insurance is not provided at least for the above liability limits this policy will be interpreted as if such underlying limits did exist at the time of loss.
 We agree that this endorsement provides additional support that the $300,000 refers to combined single limits and, therefore, include this endorsement excerpt for that purpose only.
 
 
 [5]
 The parties agree that Centennial's maximum liability under the umbrella policy is $2,000,000