441 So.2d 175 (1983)
STATE FARM FIRE AND CASUALTY COMPANY, Appellant,
v.
Reinaldo OLIVERAS, Appellee.
No. 82-2167.
District Court of Appeal of Florida, Fourth District.
November 16, 1983.
*176 Richard H. Gaunt, Jr., of Cibula, Gaunt & Pratt, West Palm Beach, for appellant.
Gary A. Esler of Esler & Kirschbaum, P.A., Fort Lauderdale, for appellee.
GLICKSTEIN, Judge.
This is an appeal from a final declaratory judgment. We reverse and remand with direction to enter judgment in favor of appellant.
Appellee was injured in a traffic accident, allegedly caused by Kelly Dana Brown, who had an auto insurance policy with State Farm Mutual Automobile Insurance Company with maximum personal bodily injury liability coverage of $10,000 for each person. Ms. Brown's father, Russell Brown, had a Success Protector Policy with State Farm Fire and Casualty Company with a $1,000,000 limit. As a daughter residing in the household and under twenty-one years of age, Ms. Brown was entitled to coverage under her father's excess liability policy. Appellee sought from the trial court a determination that coverage of Ms. Brown under the State Farm Fire and Casualty Company picked up where her $10,000 coverage under the State Farm Mutual Automobile Insurance Company left off. State Farm Fire and Casualty Company contended the excess coverage picked up only after $100,000, leaving in Ms. Brown's case a corridor of self-insurance in the amount of $90,000. The trial court entered summary judgment for appellee, holding that the terms of the excess policy were equally susceptible of both parties' interpretations, and that because of the ambiguity, as a party claiming through the insured, appellee must prevail. We disagree, based upon the express language of the policy, the pertinent provisions of which are reproduced herewith:

 Page 1
 POLICY A - LIABILITY
ITEM 4.
 COVERAGE L. PERSONAL COVERAGE U. UNINSURED
 LIABILITY $ 1000000 MOTORISTS $35,000 LESS THE
POLICY LIMITS: _________ RETAINED LIMIT  COVERAGE U
 SELF-INSURED AS DEFINED.
 RETENTION $ 250
 _________
---------------------------------------------------------------------------
ITEM 5.
UNDERLYING INSURANCE REQUIREMENTS: IT IS AGREED THAT AT THE INCEPTION OF THE
 CURRENT POLICY PERIOD THE UNDERLYING INSURANCE IN PART 1 BELOW:
 (1) IS IN FORCE AS COLLECTIBLE INSURANCE FOR AT LEAST THE MINIMUM
 UNDERLYING LIMITS AS INDICATED; AND
 (2) INSURES ALL LAND MOTOR VEHICLES OWNED OR HIRED BY THE INSURED.
---------------------------------------------------------------------------
 PART 1
 TYPE OF COVERAGE MINIMUM UNDERLYING LIMITS
--------------------------------------------------------------------------------------------------------------------
 | SPLIT LIMIT OR SINGLE LIMIT
 |-------------------------------------------------------------------------
 (a.1) AUTOMOBILE LIABILITY | BODILY INJURY  $ 100,000 EACH PERSON | BODILY INJURY AND PROPERTY
 (a.2) RECREATIONAL VEHICLE LIABILITY  | $ 300,000 EACH OCCURRENCE | DAMAGE COMBINED
 INCLUDING PASSENGER BODILY INJURY | PROPERTY DAMAGE  $ 10,000 EACH OCCURRENCE | $ 300,000
------------------------------------------|-------------------------------------------------------------------------
 (b) COMPREHENSIVE PERSONAL LIABILITY | BODILY INJURY AND PROPERTY DAMAGE COMBINED $ 100,000
--------------------------------------------------------------------------------------------------------------------
 PART 2
 ADDITIONAL UNDERLYING INSURANCE REQUIREMENTS
 TYPE OF COVERAGE UNDERLYING LIMITS
UNINSURED MOTORIST 100,000/300,000 

Page 3
Insured: The unqualified word "Insured" includes the Named Insured and:
(1) any relative with respect to (a) an automobile owned by the Named Insured or a relative, or (b) a non-owned automobile, provided his actual operation *177 or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission ...
... .
Relative: Any person (1) who is related by blood or marriage to the Named Insured, or who is a ward, adopted child or other person under the age of twenty-one in the care of the Named Insured and (2) who is also a resident of the same household as the Named Insured.
Retained Limit  Coverage L: The greater of:
(1) the total limit(s) of liability of any underlying insurance collectible by the Insured, provided that the limits indicated for the underlying coverages listed or described in Declarations Item 5, shall be the minimum amounts of underlying insurance required to be maintained by the Insured, or
(2) the amount indicated in Declarations Item 4, as the "Self-Insured Retention" if the insurance afforded by such underlying policies is inapplicable to the occurrence.
... .
1. COVERAGE L: PERSONAL LIABILITY
This Company will indemnify the Insured for ultimate net loss which the Insured shall become legally obligated to pay as damages, in excess of the Retained Limit  Coverage L, because of personal injury or property damage to which this insurance applies, caused by an occurrence, and then up to an amount not exceeding the limit indicated in Declarations Item 4, as "Coverage L  Personal Liability" as the result of any one occurrence; `provided that this Company shall not be required to assume any obligation of any underlying insurer which shall be deemed invalid or uncollectible by reason of (1) the Insured's failure to comply with any condition of the policy subsequent to an occurrence or (2) the inability of the underlying insurer to pay by reason of insolvency or bankruptcy.
Page 5

Maintenance of Underlying Insurance: Insurance as afforded by each policy described in the Declarations Item 5 shall be maintained in full force without reduction in limits or scope of coverage during the currency of this policy, except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect to accidents or occurrences during the period of this policy. Failure of the Insured to comply with the foregoing shall:
(a) with respect to any occurrence which comes within the provisions of Exclusion (d), invalidate this policy as respects such occurrence;[1]
(b) with respect to any occurrence not provided for in (a) above, not invalidate this policy but in the event of such failure this Company shall be liable only to the extent that it would have been liable had the Insured complied therewith.
We reject appellee's argument that only the named insured is required by the excess coverage policy to maintain a $100,000 primary policy and that other insureds such as Ms. Brown are not so required. To do otherwise would require us to overlook the clear definition of "insured" on page 3 of the policy. That definition plainly communicates that when the word "insured" is used without a modifier it refers not only to the named insured but also to one who meets the stated definition of "relative," where certain stated automobile situations obtain. Thus when the Coverage L, Personal Liability, is explained, the Retained Limit on that coverage is detailed, and the Maintenance of Underlying Insurance clause speaks of the insured, the term "insured" applies to the person availing *178 himself of the protection of the excess coverage policy  not merely the named insured, but, in the present instance, his daughter. Accordingly, the effect of Paragraph (b), on page 5 of the policy, reproduced above, is that if she did not have $100,000 primary coverage, which she did not, the first $100,000 of a proper claim against her nevertheless remained outside the liability of the secondary insurer. Since the insurance contract was not ambiguous,[2] the contract must be given effect as written. Midwest Mutual Insurance Company v. Santiesteban, 287 So.2d 665 (Fla. 1973). To hold otherwise would provide greater coverage for the daughter than the father at no cost to the daughter. Such proposition flies in the face of the policy's language.
Because insurance company contract writers are ever so much more sophisticated than most insureds who buy the coverage, we urge the increased use of policies whose provisions are written simply and directly so that all who can read will readily understand. This is a goal the legislature had set for automobile insurance in Section 627.421, Florida Statutes (1981), and made more explicit via Section 627.4145, Florida Statutes (Supp. 1982), which was slightly amended by Chapter 83-216, Section 96, during the 1983 legislative session. Be that as it may, case law indicates that just because insurance contracts are complex instruments, the fact that analysis is required for one fully to comprehend them does not mean the contracts are ambiguous. See Travelers Insurance Company v. C.J. Gayfer's and Co., 366 So.2d 1199, 1201 (Fla. 1st DCA 1979) (citing Blue Shield of Florida, Inc. v. Woodlief, 359 So.2d 883 (Fla. 1st DCA 1978)). The rule that ambiguities in insurance contracts are to be construed in favor of the insured, see, e.g., Gayfer's, supra, is not license for our raiding the deep pocket.
If it is any solace to this very able trial judge, he and this intermediate court share the same fallibility. This carving in stone may, as in the past, swiftly be turned to sand.
HURLEY and WALDEN, JJ., concur.
NOTES
[1] Exclusion (d) alluded to in the above has to do with certain aircraft situations and therefore is not of concern here.
[2] See also Wommack v. United States Fire Insurance Company, 323 F. Supp. 981 (W.D.Ark. 1971).