Michael J. McENTEE, et al.

v.

C. Noah DAVIS, et al.

No. 2003–522–Appeal.

Supreme Court of Rhode Island.

Dec. 9, 2004.

Paul S. Ryan, for Plaintiff.

Neil P. Philbin, Peace Dale, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The defendant, C. Noah Davis, appeals from a Superior Court judgment granting the petition of the plaintiffs Michael J. McEntee and Carol McEntee to enforce a prior consent judgment pursuant to Rule 70 of the Superior Court Rules of Civil Procedure. This case came before the Court for oral argument on September 27, 2004, pursuant to an order directing all parties to appear in order to show cause why the issues raised in this appeal should not summarily be decided. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we will proceed to decide the case at this time. For the reasons stated below, we deny the defendant's appeal.

### Facts and Procedural History

As adjacent property owners in the tranquil village of Peace Dale, in South Kingstown, Rhode Island, plaintiffs and defendant find themselves in the all-too-

common roles of bickering neighbors. The properties of the parties were created as a result of the division of a single, larger estate. This partition resulted in parcel I, plaintiffs' parcel, and parcel II, defendant's parcel.[1] The plaintiffs acquired parcel I in 1995. It lies west of parcel II, and shares a common driveway with parcel II that makes its way from the public road to a fork that diverges in the directions of the respective properties. Though plaintiffs' driveway extends to their home, it does not extend to their outbuilding,[2] which is located on the northern edge of their property, some distance from their house. The plaintiffs and their predecessors-in-title historically have gained access to the garage via a private road called Roy's Road that exists for the most part on defendant's land.[3]

The defendant purchased parcel II in April 2000. Soon thereafter, he approached plaintiffs about their use of the access road across his property. Through counsel, defendant proposed that a driveway be installed along the westerly boundary line of parcel II, which would connect plaintiffs' garage with their existing driveway. The defendant also informed plaintiffs that he intended to erect an ironwork gate across the road. Although defendant's counsel did not specifically indicate that the gate would serve to block plaintiffs' heretofore unrestricted use of the road, plaintiffs obviously believed that to be in the wind. In a preemptive strike, plaintiffs sought judicial intervention. On September 25, 2000, the Superior Court issued a temporary restraining order enjoining defendant from installing a gate or altering the claimed right of way.

Three days later, and while the restraining order was in full force and effect, defendant paved a driveway along what he believed to be the western border of his property. He also erected a stockade fence along the driveway's easterly edge. In locating the driveway, defendant relied on the information provided to him by his surveyor, David Sheldon. Unfortunately for defendant, an error in the survey resulted in a portion of the driveway being located some eighteen feet east of the true boundary line.

Soon after the new driveway had been paved, the parties reached an agreement as to its use and ownership. Their accord, memorialized in a written release dated October 18, 2000, provided that defendant would convey "in fee simple *the land which has been paved* along a portion of the western boundary line" between parcel I and parcel II, in exchange for a relinquishment of all further claims by and liability of plaintiffs. (Emphasis added). The release left the particulars as to the northerly and southerly turning points to be determined later by a further survey or by mutual consent. Within days of signing the release, the parties executed a consent judgment, which was entered by the court on October 25, 2000. In the consent judgment, the plaintiffs agreed to renounce any rights to the access road on *defendant's* property. The defendant agreed to pave the westerly edge of parcel II bordering

1. Parcel I has also been denominated as "Martha's Vineyard," and parcel II as "The Acorns." Because the consent judgment itself refers to the parcels as I and II, we too shall do so throughout this opinion.

2. The plaintiffs' out-building has been called both a "garage" and a "barn." For purposes of this opinion, it shall be referred to as a "garage," though no significance attaches to this title.

3. The parties dispute whether plaintiffs have traversed the private road on defendant's property by easement or license. We need not decide that issue in order to dispose of this appeal.

on parcel I,[4] and to convey fee simple absolute to the paved portion of parcel II to the property line of parcel I to plaintiffs.[5] Consistent with the release, the parties agreed that the northerly and southerly turning points would be determined later by mutual agreement or survey.

Surveyor Sheldon's error was discovered in January 2001. After entering the consent judgment, plaintiffs hired Waterman Engineering Co. to survey the property to determine the northerly and southerly turning points of the driveway. When, after comparing survey results, Sheldon and Waterman could not agree to the turning point locations, a third party, Boyer Associates, was hired to determine the turning points pursuant to the consent judgment. As a result of Boyer's examination, the parties learned that Sheldon's initial survey incorrectly located the boundary line well east of its actual location.[6]

Feeling that he was being shortchanged, defendant refused to convey the disputed portion of parcel II to plaintiffs, which in turn caused plaintiffs to file a petition to enforce the consent judgment pursuant to Rule 70. In response, defendant sought declaratory relief, requesting that both the release and consent judgment be rescinded and nullified as a result of mutual mistake of fact.

On August 8, 2003, the Superior Court granted plaintiffs' petition to enforce the consent judgment. The trial court found that there was no mutual mistake of fact, but rather a unilateral mistake by defendant. It ruled the consent judgment valid and ordered defendant to comply with it. Final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure was entered on August 22, 2003.

## Standard of Review

▪ "When reviewing findings of fact by a trial justice in a nonjury case, we apply a deferential standard of review." *Vigneaux v. Carriere,* 845 A.2d 304, 306 (R.I.2004) (citing *Macera v. Cerra,* 789 A.2d 890, 893 (R.I.2002) and *Barone v. Cotroneo,* 711 A.2d 648, 649 (R.I.1998) (mem.)). "This Court will not disturb the findings of a trial justice sitting without a jury in a civil matter 'unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" *Paradis v. Heritage Loan and Investment Co.,* 701 A.2d 812, 813 (R.I.1997) (mem.) (quoting *Harris v. Town of Lincoln,* 668 A.2d 321, 326 (R.I.1995)); *see also Gross v. Glazier,* 495 A.2d 672, 673 (R.I.1985); *Lisi v. Marra,* 424 A.2d 1052, 1055 (R.I.1981).

▪ To nullify or rescind the consent judgment as requested by defendant, the trial court was required to find that there was a mutual mistake between the parties. A consent judgment is a contract, subject to the rules of contract law. "'Although a consent judgment receives a court's imprimatur, the judgment is in essence a contract between the parties to the litigation'

---

4. Despite the language of the consent judgment, the driveway already had been paved at the time that the parties executed the agreement.

5. Although the consent. judgment describes the driveway as being approximately 200 feet long, defendant pulled up some 23 feet of pavement after the judgment was entered.

The remaining length of the driveway is, however, of sufficient length for plaintiffs to access their garage without traversing defendant's property.

6. Sheldon was later added as a defendant in plaintiff's complaint, and defendant, Davis, also filed a cross-claim against him. Sheldon is not, however, a party to this appeal.

and is to be construed as a contract." *In re McBurney Law Services, Inc.*, 798 A.2d 877, 882 (R.I.2002) (quoting *Trahan v. Trahan*, 455 A.2d 1307, 1310 (R.I.1983)). Thus, just as "a unilateral mistake does not create the right to rescind a contract," it does not affect the validity of a consent judgment. *Greenwood Credit Union v. Fleet National Bank*, 675 A.2d 415, 416 (R.I.1996) (mem.). "[A] unilateral mistake in the formation of a contract affords the errant no relief." *Boccarossa v. Watkins*, 112 R.I. 551, 557, 313 A.2d 135, 138 (1973).

Under our law, "[a] judgment entered by consent cannot 'be opened, changed, or set aside without the assent of the parties in the absence of fraud, mutual mistake or actual absence of consent * * *.'" *DeFusco v. Giorgio*, 440 A.2d 727, 729 (R.I.1982) (quoting *Douglas Construction and Supply Corp. v. Wholesale Center of North Main St., Inc.*, 119 R.I. 449, 452, 379 A.2d 917, 918 (1977)). For a consent judgment to be altered or rescinded, "[t]he mistake alleged must be *mutual.*" *Fleet National Bank v. 175 Post Road, LLC.*, 851 A.2d 267, 274 (R.I.2004) (citing *Hopkins v. Equitable Life Assurance Society of the United States*, 107 R.I. 679, 685, 270 A.2d 915, 918 (1970)).

By definition, a mutual mistake is one that is "common to both parties wherein each labors under a misconception respecting the same terms of the written agreement sought to be canceled." *Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I.2004) (quoting *Leonard v. McDowell*, 824 A.2d 1266, 1270 (R.I.2003)). "An agreement containing a mutual mistake fails in a material respect correctly to reflect the understanding of both parties." *Rivera*, 847 A.2d at 284. For the court to intervene and correct a written instrument, there "must be, as it is usually expressed, the mistake of *both* parties to it; that is, such a mistake in the draughting [*sic*] of the

writing, as makes it convey the intent or meaning of neither party to the contract." *Vanderford v. Kettelle*, 75 R.I. 130, 142, 64 A.2d 483, 489 (1949) (quoting *Diman v. Providence, Warren, and Bristol R.R. Co.*, 5 R.I. 130, 134–35 (1858)). A party must prove mutual mistake by clear and convincing evidence before the court will reform, vacate, or dismiss a contractual agreement. *See Rivera*, 847 A.2d at 284.

## Analysis

In this case, defendant maintains that a mutual mistake occurred when the parties entered into the consent judgment, urging that they both believed that the driveway had been paved along the boundary line. The defendant contends that the variance between the written agreement and the intent of the parties was demonstrated by clear and convincing evidence, and warrants a reversal of the trial court's ruling that mutual mistake did not occur. According to defendant, both parties believed that the driveway had been installed on the property line when they signed the consent judgment. There is no question that a surveying error had occurred, nor is there dispute that neither party was aware of the error when the consent judgment was executed. However, shared ignorance about the correct boundary line does not unequivocally equate with mutual mistake of the parties. Indeed, it is not merely the existence of common error that creates mutual mistake. Instead, "the parties' intent is a determinative factor." *Nunes v. Meadowbrook Development Co.*, 824 A.2d 421, 425 (R.I.2003).

The release, signed approximately one week before the consent judgment, refers to "the land which has been paved along a portion of the western boundary line between the McEntee property (Parcel 1) and the Davis property (Parcel 2) * * *."

The consent judgment refers to the driveway twice. Section 3 of the consent judgment speaks as though the driveway was not yet installed, stating that "Declarant C. Noah Davis shall pave the westerly edge of Parcel II bordering on Parcel I as depicted on said plan a distance of approximately 200 feet more or less." Section 4 relates back to Section 3, declaring that "Defendant Noah C. Davis shall convey by deed, title and fee simple absolute to the above-described paved portion of Parcel II to the property line of Parcel I to the Plaintiffs."

However, there is no doubt that by the time these neighbors agreed to the terms of the release and the consent judgment, the driveway already had been situated on defendant's property. The defendant argues, essentially, that the parties' agreement was based not on the actual, physical location of the driveway, but on their mutual understanding that the new driveway was on the property line. He contends that the consent judgment fails to embody the true intent of the parties because it requires the conveyance of a different, and larger, portion of parcel II than the parties intended.

On the other hand, plaintiffs argue that there has been no mistake on their part. Instead, they contend that they relied on the already-existing driveway, coupled with the terms of both the consent judgment and release, when entering the agreement, and that the consent judgment, as it stands, embodies their bargain precisely. Indeed, plaintiff Michael McEntee testified that he was unaware of the location of the property line when he agreed to Davis's proposal and that he based his agreement on what he saw. Significantly, he testified that he had never received a copy of Sheldon's survey before signing the agreement. At trial, plaintiff testified:

"I didn't have any input as to the location of this, but, when it was presented to me in its paved form, it was acceptable to me and something I could live with and wanted to live with, and that's why I not only signed the contract, but also signed the consent judgment."

In contrast, defendant testified that the precise location of the boundary line was of paramount importance when he decided to install the driveway, and that it was his intent to install the driveway along the boundary and convey only that property to plaintiffs.

■ For a court to find mutual mistake, and to warrant reformation, "the credibility of the witnesses and the weight of the evidence must be such as clearly to convince the court without hesitancy of the truth of the precise facts in issue." *Nunes*, 824 A.2d at 425 (quoting *Vanderford*, 75 R.I. at 142, 64 A.2d at 489). "The task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." *Bogosian v. Bederman*, 823 A.2d 1117, 1120 (R.I.2003) (quoting *State v. Sparks*, 667 A.2d 1250, 1251 (R.I.1995)). It is not this Court's function to weigh the credibility of witnesses at the lower court trial. *Id.* It is clear that the trial justice placed great weight on plaintiff's testimony that acceptance of defendant's proposal was not based on the actual boundary line, but was a product of defendant's offer to exchange the newly paved driveway for plaintiffs' right-of-way over his land.

This Court most recently addressed the issue of mutual mistake in *Rivera* and *Fleet*. After applying the instant facts to the standards enunciated in those cases, we cannot conclude that the trial justice committed reversible error in making a factual determination of unilateral mistake. In *Rivera*, the plaintiff sought to vacate a settlement agreement on the basis of mu-

tual mistake. In that case, the plaintiff was an automobile accident victim who initially received medical payments from the insurer of the vehicle in which she was a passenger. Subsequently, the plaintiff executed a release and indemnification agreement with a second insurer, in exchange for consideration of $3,000. *Rivera*, 847 A.2d at 283. Upon realizing that her settlement check was subject to the other insurer's lien against her for medical payments already made, the plaintiff sought to vacate the agreement based on mutual mistake by the parties in the formulation of the settlement release. *Id.* The plaintiff argued that she had agreed to the settlement based on the insurer's assurance that the $3000 was to compensate her for pain and suffering, not for medical payments, and thus not subject to lien. *Id.* at 284.

This Court denied the plaintiff's appeal and held that she had not met her burden of proving mutual mistake. *Rivera*, 847 A.2d at 285. We looked to the language of the agreement, found no evidence of ambiguity, and found that the plaintiff's misunderstanding or mistake as to the purpose of the payment was unilateral, and not shared by the insurer. *Id.* In *Rivera*, as in the instant case, the parties saw before them the objects of their agreement and acted without verifying that they were correct in their personal understandings of how the terms of the agreement were to be put into effect.

In the *Fleet* case, the parties entered into a purchase and sale agreement in which the seller agreed to remove asbestos from certain areas of the property to be conveyed. After the agreement was executed, the parties learned of asbestos in other areas of the property, and the buyer argued for reformation of the agreement based on mutual mistake of fact. *Fleet*, 851 A.2d at 272. The buyer argued that because both parties relied on a report provided by the seller setting forth the extent of necessary removal, but which, in fact, underestimated the amount, the agreement should have been reformed. *Id.* at 272–73. This Court rejected the buyer's assertion, and found the mistake to be the buyer's unilateral mistake, "based upon its own lack of knowledge of the condition of the property." *Id.* at 274.

■ In *Fleet*, we strongly emphasized the role played by the opposing party, noting that the seller "did not bargain to limit the scope of asbestos abatement to certain areas by accident. It did not stumble into potentially favorable contract provisions by accident * * *." *Fleet*, 851 A.2d at 274. In this appeal, the facts clearly demonstrate that the surveyor's error caused defendant to agree to convey more property to plaintiffs than he originally believed would be transferred. However, this miscue was exacerbated by the risk that defendant took in siting the driveway prior to reaching an agreement with the plaintiffs, rather than from a mutual mistake. "A mistake by one party coupled with ignorance thereof by the other party does not constitute a mistake within this rule." *Id.* (quoting *Vanderford*, 75 R.I. at 142, 64 A.2d at 489 (1949)). Here, defendant's mistake, coupled with plaintiffs' unawareness, results not in a mutual mistake warranting rescission of the agreement, but rather in plaintiffs receiving just what they bargained for, despite defendant's apparent loss.

Because mutual mistake was not shown by clear and convincing evidence, the trial justice rightly concluded that the consent judgment was valid and should be enforced.[7] We hold that the trial justice's

---

7. We also note the principles set forth in the Restatement (Second) *Contracts,* § 154

finding of unilateral mistake on the part of the defendant was not clearly erroneous, did not misconceive or overlook material evidence, and did not fail to do substantial justice between the parties. After reviewing the record, we find no reason to disturb the trial justice's reliance on the plaintiff's testimony and conclusions drawn therefrom.

For the foregoing reasons, we uphold the trial court decision, and the judgment of the Superior Court is affirmed.

(1981). Section 154(c) of the restatement provides in pertinent part that a "[a] party bears the risk of a mistake when * * * the risk is allocated to him by the court on the ground that it is reasonable under the circumstances to do so." If those principles were to be applied to this case, and if there were a mutual mistake, we may well have held that defendant, who was responsible for hiring the surveyor who made the erroneous survey, bore the risk that there would be an error in the survey and would be precluded from invoking the mutual mistake doctrine. Although this Court has never formally addressed this particular section of the restatement, courts in other jurisdictions have done so. *See, e.g., Harbor Insurance Co. v. Stokes,* 45 F.3d 499, 501–03 (D.C.Cir.1995) (discussing and applying the just-quoted restatement rule); *Flippo Construction Co. v. Mike Parks Diving Corp.,* 531 A.2d 263, 272 (D.C.1987); *Hillcrest Realty Co. v. Gottlieb,* 234 A.D.2d 270, 651 N.Y.S.2d 55, 56 (1996) (mem.).