DECISION
This matter is before the Court on Plaintiff Merrimack Mutual Fire Insurance Company's ("Merrimack") action for a declaratory judgment. Merrimack asks this Court to reform and/or partially rescind an insurance policy ("Policy") made between itself, Ronald H. Dufault and Pauline Dufault ("Dufaults") on the grounds of mutual mistake and misrepresentation. Defendant Frank Beauparlant ("Beauparlant") objects to any reformation or rescission of the Policy and contends that Ronald H. Dufault, Jr. ("Dufault Jr.") is covered by the Policy. Jurisdiction is pursuant to the Uniform Declaratory Judgment Act, G.L. 1956 §9-30-1 et. seq. For the reasons set forth below, the Court holds that Dufault Jr. was not intended to be covered by the Policy, and the Policy shall be reformed to reflect the intentions of the contracting parties.
 Facts and Travel[1]
On February 4, 1999, while driving his 1979 pickup truck, Dufault Jr. was involved in an automobile accident with Beauparlant, who was driving a vehicle owned by the Woonsocket Housing Authority and was acting in the course of his employment. (ASF 6.) Dufault Jr.'s truck was insured by Travelers Insurance Company with single limit liability coverage of $75,000.00. (ASF 5.) Beauparlant claimed to be injured as a result of the accident and instituted a complaint[2] against Dufault Jr., Quincy Mutual Fire Insurance Company[3] and Aetna/Travelers Insurance.[4]
At the time of the accident, Dufault Jr. was living with his parents, the Dufaults, at 430 Diamond Hill Road, Woonsocket, Rhode Island. (ASF 4.) Prior to the accident, Merrimack had issued a personal umbrella liability endorsement to the Dufaults, which commenced May 27, 1990 and remained in full effect on February 4, 1999, the date of the accident. (ASF 1,3.) The Policy provides that
 "Throughout this endorsement, `you' and `your' refer to the `named insured' shown on Part B, Declarations. Your spouse is included if a resident of your household. Also included is any relative who owns a car, motorcycle, motor home, or recreational vehicle, but only to the extent that the relative is covered by separate primary insurance shown on Part B Declarations." (Exhibit A at 3.)
The Policy defines "relative" as "a person who lives in your household and is: A. related to you; or B. an unmarried, dependent person under the age of 21 in your care." Id. The Part B Declarations set the minimum underlying limits of insurance that must be maintained in order for Merrimack to be obligated to provide excess liability coverage. (ASF 7.) Part B expresses that the minimum automobile liability insurance required is: Bodily Injury Liability — $250,000.00 each person/$500,000 each occurrence; Property Damage Liability — $100,000.00 each occurrence; or combined — $300,000.00 each occurrence." (ASF 8.)
After issuing this Policy, Merrimack would periodically send renewal questionnaires to the Dufaults. (ASF 9.) In the renewal questionnaire for the policy period May 27, 1998 to May 27, 1999, the Dufaults listed only two automobiles in the household and named only themselves as the operators of the vehicles. (ASF 9, 10.) Mr. Dufault did not indicate on the questionnaire that his son was a member of his household or that he owned and operated a motor vehicle because Mr. Dufault only intended for the personal umbrella liability endorsement to apply to his own vehicles. (ASF 11, 12.)
According to Beauparlant, the worker's compensation administrator for the Woonsocket Housing Authority has paid medical bills of over $104,000 and also has paid Beauparlant weekly indemnity checks. (Beauparlant's Brief at 3.) In order to recover these expenses, the administrator has asserted a lien for approximately $250,000. Id. The total of available insurance from the various insurers, not including the Policy at issue, is $225,000. Id. Beauparlant seeks to recover his further expenses through the Dufaults' personal umbrella policy, claiming that Dufault Jr. was covered by that Policy. Merrimack contends, however, that Dufault Jr. is not covered by the Policy because he did not possess the required minimum underlying automobile insurance at the time of the accident. Merrimack further asserts that the parties were operating under mutual mistake. The parties also stipulated that if Merrimack knew that Dufault Jr. owned a motor vehicle as a member of the Dufaults' household without the minimum insurance and knew that Mr. Dufault did not intend for any of his children to be covered by his insurance policies, it would have issued a restricted insured endorsement, which would have excluded Dufault Jr. for any claims arising out of the ownership, maintenance or use of a car, motorcycle, motor home or recreational vehicle. (ASF 14.) Merrimack has consequently commenced this action for declaratory judgment requesting this Court to reform the policy to reflect the understanding of the parties.
 Standard of Review
The Uniform Declaratory Judgments Act "confers broad discretion upon the trial justice as to whether he or she should grant declaratory relief." Cruz v. Wausau Ins., 866 A.2d 1237, 1240
(R.I. 2005) (citing Employers' Fire Insurance Co. v. Beals,103 R.I. 623, 628, 240 A.2d 397, 401 (1968)). "The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." Sec. 9-30-1.
The Court "interprets the terms of an insurance policy according to the same rules of construction governing contracts."Town of Cumberland v. Rhode Island Interlocal Risk Mgmt. Trust,Inc., 860 A.2d 1210, 1215 (R.I. 2004). The policy is examined in its entirety and its terms are afforded their plain, ordinary, and usual meaning. Id. "If the terms of an insurance contract are subject to more than one reasonable interpretation, the policy will be construed in favor of the insured to avoid forfeiture." Campbell v. Norfolk Dedham Mutual Fire InsuranceCo., 682 A.2d 933, 935 (R.I. 1996) (citing Mallane v. HolyokeMutual Insurance Co., 658 A.2d 18, 20 (R.I. 1995)).
 Analysis
1) Minimum Underlying Insurance
Merrimack first argues that Dufault Jr. is not covered by the Policy because he did not obtain the minimum underlying insurance that Merrimack required in order for the umbrella coverage to take effect. According to its terms, the Policy extends coverage beyond the named insured to "any relative who owns a car, motorcycle, motor home or recreational vehicle, but only to theextent that the relative is covered by separate primary insurance shown on Part B Declarations." (Emphasis Added.) Here, Dufault Jr. apparently satisfies the Policy's definition of a relative of the named insured as he is the Dufaults' son and was living with them in their household at the time of the accident. Merrimack argues, though, that Dufault Jr. was required to maintain the minimum insurance listed in Part B, and pursuant to that section, was required to have the following underlying automobile insurance: Bodily Injury Liability $250,000.00 each person/$500,000 each occurrence; Property Damage Liability — $100,000.00 each occurrence; or combined — $300,000.00 each occurrence. It is undisputed that Dufault Jr. had only single limit liability coverage of $75,000. Consequently, Merrimack believes that because Dufault Jr. did not maintain the minimum required insurance, Dufault Jr. does not qualify as an additional insured. This Court, however, disagrees with Merrimack's interpretation of the Policy.
Merrimack's interpretation of the minimum underlying insurance requirement fails to take into consideration other provisions within the Policy. See Town of Cumberland, 860 A.2d at 1215
(Insurance policies shall be examined in their entirety). In addition to the Part B Declarations, the Policy contains a gap provision which provides:
 "THIS ENDORSEMENT DOES NOT PROVIDE COVERAGE BELOW THE LIMITS OF LIABIITY DESCRIBED IN THE SCHEDULE ON PART B — DECLARATIONS. If your other coverages do not have these limits you will be unprotected for the difference between what you have and what this schedule shows. You must keep these coverages and limits in effect to avoid these gaps in your protection."
According to Beauparlant, this provision clearly indicates that Dufault Jr. was not required to maintain the minimum underlying insurance in order to be entitled to the excess coverage provided by Merrimack's Policy. Rather, Beauparlant contends that Merrimack would not be liable for any amount below the required underlying minimum that was not covered by a separate insurance policy but would still be responsible for providing coverage over the required minimum.
This Court agrees. "`[U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage. . . .'" Liberty Mutual Insurance Co. v. HarborInsurance Co., 603 A.2d 300, 302 (R.I. 1992) (quoting 8A J. Appleman, Insurance Law and Practice § 4909.85 (1981)). "The usual purpose of an umbrella policy is to extend coverage beyond the limits of an underlying insurance policy." Smith v. HomeIndemnity Co., 728 P.2d 666, 668 (Ariz.Ct.App. 1986) (citing Appleman supra, at § 4909.85). With that purpose in mind, the Court finds that the Policy at issue here was intended to provide coverage over the minimum required insurance, and even if that minimum insurance was not maintained, the Policy would not necessarily become void. Instead, the insured would simply be liable for any amount below the minimum requirement that was not covered by a separate insurance, i.e. the "gap." This interpretation is enunciated in the Ohio Court of Appeals' holding in Kelley v. Ernst, 670 N.E.2d 510 (Ohio Ct.App. 1995). In Kelley, the plaintiff's daughter was killed while riding as a passenger on defendant's motorcycle. Id. at 511. At the time, defendant had an insurance policy with a $12,500 per person and $25,000 per occurrence limit. Id. Defendant was also an insured under his parents' homeowners umbrella policy. Id.
That policy, however, similar to the one presently before the Court, required defendant to maintain underlying insurance coverage of $100,000 per person and $300,000 per occurrence.Id. at 512. The Court held that because defendant did not have the required underlying insurance, State Farm (the issuer of the umbrella policy), was not liable for the difference between the limits which the insured maintained and the required limits.Id. at 513. See also Dilorenzo v. Edward Holle InsuranceAgency, 735 F. Supp. 571, 573 (S.D.N.Y. 1990) (Umbrella policy was clear that coverage was only for amounts in excess of minimum required insurance).
Similarly, the Court of Appeals of Florida has interpreted an umbrella policy comparable to the one before the Court as obligating a named insured's child to maintain the minimum underlying required insurance. State Farm Fire and Casualty Co.v. Oliveras, 441 So. 2d 175 (Fla. 4th Dist.Ct.App. 1983). If the child failed to do so, he or she would be liable for the difference between the insurance he or she did maintain and the amount that was required by the umbrella policy. Id. at 177-78. The Court explicitly rejected the argument that only the named insured was required to maintain the minimum underlying insurance and recognized that "[t]o hold otherwise would provide greater coverage for the daughter than the father at no cost to the daughter. Such proposition flies in the face of the policy's language."[5] Id. at 178.
This Court likewise holds that the Policy did not require only the named insured to purchase a separate underlying policy with the limits set forth in Part B Declarations. The Policy explicitly states that "This Endorsement Does Not Provide Coverage Below The Limits of Liability Described In The Schedule On Part B — Declarations." (Emphasis Added.) The Policy proclaims that it will not provide coverage below the minimum amount required; however, nowhere does it explicitly state that it will not provide coverage over the minimum underlying insurance if that insurance is not maintained. Likewise, the portions of the Policy cited by Merrimack do not demonstrate that the Policy excludes any coverage other than the "gap." The Policy simply states that a relative is covered "to the extent that [he or she] is covered by separate primary insurance shown on Part B Declaration." In other words, Merrimack agreed to cover a qualified relative for amounts above the required minimum, yet it did not declare that it would provide no coverage if the minimum underlying required insurance was not held.
Similar to the holding in Oliveras, it would be nonsensical and contrary to the Policy's intent for this Court to require the named insureds, the Dufaults, to maintain the underlying insurance while not requiring Dufault Jr. to maintain such insurance yet still allowing him to receive the benefits of the Policy. Stated differently, if Dufault Jr. did not maintain sufficient underlying insurance, he could not be expected to recoup from Merrimack amounts less than what he was required to possess. Accordingly, as it pertains to this policy, the Court finds that both the named insureds and qualifying relatives were required to maintain the minimum required insurance as defined in Part B Declarations. If the individual failed to do so, Merrimack would not be liable to the insured for any amounts within "the gap" — the amount between the insured's actual underlying insurance and the amount that the insurer required the insured to maintain. In this case, therefore, if the Court finds that the Policy applied to Dufault Jr., then Merrimack would not be responsible for the difference between the $75,000 single limit policy held by Dufault Jr. and the $300,000 single limit required by the Policy.
Consequently, this Court holds that the fact that Dufault Jr. did not carry the Policy's required minimum underlying insurance did not exclude him from coverage under the Policy. However, even though the lack of the underlying minimum insurance does not exclude Dufault Jr. from the Policy's coverage per se, it does not necessarily answer the question as to whether the parties intended for Default Jr. to be covered by the Policy. Merrimack contends that the parties mistakenly believed that coverage would not extend to Dufault Jr. and that the contract should be reformed to reflect their intentions.
2) Mutual Mistake
Even if Dufault Jr. did not need to maintain the required minimum underlying insurance in order to be covered by the Policy, Merrimack asserts that the Policy does not reflect the understanding between itself and the Dufaults and that the parties were mutually mistaken as to the scope of the Policy's coverage. According to Merrimack, the Dufaults were mistaken in their belief that their son was not covered by the Policy and therefore, mistakenly thought that they did not have to provide the supplemental information regarding Dufault Jr. in the renewal questionnaire. Merrimack was mistaken in its belief that there were no other members of the household that owned motor vehicles that could be covered by the Policy, and had Merrimack possessed this information, it would have issued a restrictive endorsement to clarify the Policy. Due to this mutual mistake, Merrimack asks this Court to reform the Policy to reflect the understanding of those who entered into it.
For a court to reform an agreement, "it must appear that by reason of a mistake, common to the parties, their agreement fails in some material respect correctly to reflect their prior completed understanding." Dubreuil v. Allstate Insurance Co.,511 A.2d 300, 302 (R.I. 1986). "`There can be no reformation unless the variance between what is written and what was originally intended, as well as the mutual mistake, are demonstrated by clear and convincing evidence." Leiter v.Allstate Insurance Co., 725 A.2d 882, 884 (R.I. 1999) (quotingHopkins v. Equitable Life Assurance Society of the UnitedStates, 107 R.I. 679, 685, 270 A.2d 915, 918 (1970)). A mutual mistake is a mistake "common to both parties wherein each labors under a misconception respecting the terms of the written agreement sought to be cancelled." Rivera v. Gagnon,847 A.2d 280, 284 (R.I. 2004). However, while a mutual mistake is grounds for reformation, a unilateral mistake in the formation of a contract affords the mistaken party no relief. McEntee v.Davis, 861 A.2d 459, 463 (R.I. 2004). Thus, "[f]or the court to intervene and correct a written instrument, there `must be, as it is usually expressed, the mistake of both parties to it; that is such a mistake in the draughting [sic] of the writing, as makes it convey the intent or meaning of neither party to the contract.'" Id. (citing Vanderford v. Kettelle, 75 R.I. 130,142, 64 A.2d 483, 489 (1949) (quoting Diman v. Providence,Warren, and Bristol R.R. Co., 5 R.I. 130, 134-35 (1858))).
This Court finds that Merrimack has established by clear and convincing evidence that the Policy does not reflect the complete understanding and meaning of its parties. When filling in the renewal questionnaire for the policy period May 27, 1998 to May 27, 1999, the Dufaults did not provide any information regarding Dufault Jr. (Exhibit B.) The questionnaire specifically stated: "List all members of the household and all operators of vehicles/watercraft as required by company."[6] In response to that demand, the Dufaults listed themselves, and indicated that the vehicles that they used were a 1984 Ford Wagon and a 1987 Ford Van. Pursuant to the Agreed Statement of Facts, "Ronald H. Dufault did not list his son or his son's vehicle on the renewal questionnaire because he intended that the personal umbrella liability endorsement only applied to his own vehicles." (ASF 12.) Furthermore, it is clear from the Agreed Statement of Facts that Mr. Dufault did not want any of his children to be covered by his insurance policies, in this case Merrimack's personal umbrella liability endorsement. (ASF 12, 13, 14.) Accordingly, this Court finds that the Dufaults did not intend for Dufault Jr. to be covered by the policy and were mistaken in their belief that they did not have to provide the supplemental information in the renewal questionnaire.
Merrimack's mistake is likewise sufficiently clear from the record. Merrimack relied on the renewal questionnaire, and in doing so was under the belief that the household to be covered by the Policy consisted of only two parties — the Dufaults — and covered only two vehicles: the 1984 Ford Wagon and the 1987 Ford Van. The Agreed Statement of Facts ¶ 14 specifically states that
 "[i]f Merrimack Mutual Fire Insurance Company knew that Ronald H. Dufault, Jr. owned a motor vehicle as a member of the household which did not have the minimum required limits of the personal umbrella liability endorsement and knew that Ronald H. Dufault did not want his children insured under any of his insurance policies including the personal umbrella endorsement, it would have issued a restricted endorsement which would have excluded Ronald H. Dufault, Jr. as an insured for any claims arising out of the ownership, maintenance or use of a car, motorcycle, motor home or recreational vehicle." (ASF 14.)
Thus, the parties' stipulation that Merrimack would have issued a restrictive endorsement if they had known of Dufault Jr. and related pertinent information is clear and convincing evidence that Merrimack mistakenly believed that there was no one else who was intended to be covered under the Policy.
Merrimack's request for reformation will not necessarily be granted, though, simply because the parties were mutually mistaken. Rather, the mistake between the parties has to be one that is material. Hopkins, 107 R.I. at 685, 270 A.2d at 918
("To warrant reformation it must appear that by reason of mistake, common to both parties, their agreement fails in somematerial respect correctly to reflect their prior completed understanding." (Emphasis added.)) Here, the Court finds that the parties' mistakes are material. For example, while the Court will not speculate as to why the Dufaults did not desire for Default Jr. to be covered by the Policy, a belief that Dufault Jr. was excluded is material because if he were not excluded, the parents could potentially become entangled with Dufault Jr.'s problems, such as is illustrated by the case before the Court. The mistake is likewise material to Merrimack because the insurance provider would be subjecting itself to increased risk of which it was unaware, without being provided the opportunity to account for that additional risk through a higher premium. Consequently, this Court holds that the parties were each under a mistaken belief that materially impacted their intended agreement. While the mere existence of common error does not create mutual mistake, but rather it is the parties' intent that is the determinative factor, neither the Dufaults nor Merrimack intended for the Policy to provide coverage to Dufault Jr. See McEntee,861 A.2d at 463 (citing Nunes v. Meadowbrook Development Co.,824 A.2d 421, 425 (R.I. 2003)) ("[I]t is not merely the existence of common error that creates mutual mistake. Instead, `the parties' intent is a determinative factor.'") The mistake here materially affects the agreement, and accordingly, the contract shall be reformed to reflect the parties' intentions.
Beauparlant, however, contends that the parties were not mistaken as Merrimack claims, and thus, reformation of the Policy is not warranted. First, Beauparlant argues that in the umbrella liability renewal questionnaire for the period of May 27, 1992 through May 27, 1993, Mr. Dufault named four drivers, including Dufault Jr. Further, Dufault Jr. was living with his parents and received his mail at their address. It therefore follows, Beauparlant asserts, that Merrimack knew or should have known that Dufault Jr. was a member of the Dufaults' household. Consequently, Merrimack's assertion that they had no knowledge of any potential exposure from the presence of a third vehicle with a separate operator is inaccurate. Beauparlant argues that as Merrimack knew of Dufault Jr. and should have known that as he lived with the Dufaults and satisfied the Policy's definition of "relative," the company could potentially be subject to liability for Dufault Jr.'s actions.
This Court finds that such arguments do not outweigh Merrimack's clear and convincing evidence that it was mistaken about who was a member of the household and who was covered by the Policy. While the 1992-1993 renewal questionnaire listed Dufault Jr. as a member of the household, Merrimack had received three additional questionnaires between 1993 and the time of the accident, all of which did not list Dufault Jr. as a member of the household or as a driver of any vehicle. Thus, this Court finds that Merrimack could reasonably have mistakenly thought that Dufault Jr. was no longer a member of the household and that there would be no coverage over him through the Policy. Further, the fact that Dufault Jr. was living in the house and receiving his mail there is also inconsequential, as Merrimack had no reason to know that Dufault Jr. was still residing at the home, and if he was, whether he had a vehicle which he operated that would subject Merrimack to liability under the Policy.[7]
Even if Merrimack were mistaken, Beauparlant maintains that the Dufaults could not have been mistaken about who they believed was covered by the Policy. Specifically, the Dufaults filed a counterclaim against Merrimack in which they asserted: "The plaintiff [Merrimack] has issued a policy of insurance which provides coverage to the defendant, Ronald H. Dufault, Jr., or is alleged to provide coverage to Ronald H. Dufault, Jr. (Counterclaim at ¶ 3.) Accordingly, Beauparlant argues the Dufaults were not mistaken as to who was covered by the policy as a member of the household as the Dufaults counterclaimed that the Policy applied to Dufault Jr.
However, the Dufaults' counterclaim does not cause Merrimack's argument to fail. First, the Dufaults' stated their assertion in the alternative, specifically using the word "alleged." In other words, the Dufaults were not necessarily admitting that Dufault Jr. was covered by the insurance policy; instead they were simply responding to the allegation that he was covered in an attempt to recover their attorney's fees for having to defend themselves from Merrimack's complaint. Additionally, even if the counterclaim could be interpreted to stand as the Dufaults' admission that Dufault Jr. was covered by the Policy, this would represent nothing more than their belief at the time of making the counterclaim. The time period of consequence here is when the Dufaults filled in the 1998-1999 renewal questionnaire. SeeDubreuil, 511 A.2d at 302 (Mutual mistake occurs when agreement fails to reflect parties' "prior completed understanding");Leiter, 725 A.2d at 884 (Party seeking reformation is required "to present evidence of a variance between what was intended atthe time of contracting and what was written in the contract . . . (Emphasis added.)). While circumstances may have arisen since that time to make the Dufaults believe that Dufault Jr. was covered by the Policy, as they alleged in their counterclaim, such events do not affect the Dufaults' intent and understanding at the time they completed the 1998-1999 renewal questionnaire and any mistakes they may have then possessed. The Agreed Statement of Facts specifically provides that "Ronald H. Dufault did not list his son or his son's vehicle on the renewal questionnaire because he intended that the personal umbrella liability endorsement only applied to his own vehicles." (ASF 12.) Consequently, even if the Defaults now believe that Dufault Jr. is covered by the Policy, such belief does not affect the Court's decision to reform the contract to reflect the parties' intentions for the time period during which the accident at hand occurred. The Agreed Statement of Facts clearly demonstrates that the Dufaults did not intend for Dufault Jr. to be covered at that time, and thus, Beauparlant's argument that the counterclaim changes this conclusion must fail.[8]
Accordingly, because Merrimack and the Dufaults were mutually mistaken as to who was subject to coverage under the Policy, this Court grants Merrimack's request to reform the Policy to reflect the parties' intentions. This Court finds that the most efficient way to reform this contract to reflect the parties' intentions is to allow Merrimack to issue a Restricted Insured Endorsement specifically excluding Dufault Jr. from the Policy's coverage. The endorsement will be retroactively effective from May 1, 1998, the date that Mr. Dufault signed the 1998-1999 renewal questionnaire and the earliest date for which this Court has evidence to find that the parties were acting upon mutual mistake.
3) Misrepresentation
Merrimack also asks this Court to partially rescind the Policy as it relates to Dufault Jr. because the Dufaults made a material misrepresentation when they failed to list the presence of Dufault Jr. or his vehicle on the renewal questionnaire. Had the Dufaults identified Dufault Jr. as a member of the household on the 1998-1999 renewal questionnaire, Merrimack asserts that it would have investigated to determine whether the Dufaults intended Dufault Jr. to be covered by the Policy, and if they had not, Merrimack would have issued a Restricted Insured Endorsement.
"A misrepresentation is `any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.'"Travelers v. Spidell, 682 A.2d 471, 473 n. 1 (R.I. 1996) (quoting Halpert v. Rosenthal, 107 R.I. 406, 413, 267 A.2d 730,734 (1970)). As it specifically applies to insurance policies, a material misrepresentation "is any representation that induces the insurer to insure the applicant." Evora v. Henry,559 A.2d 1038, 1040 (R.I. 1989). Where one has induced a party to enter into a contract by means of a material misrepresentation, the latter may rescind the contract, no matter whether the representation was innocent or fraudulent. Halpert,107 R.I. at 413, 267 A.2d at 734. Furthermore, nondisclosure is equivalent to an assertion in certain cases. The Restatement (Second) of Contracts provides the following guidelines:
 "A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only:
 (a) where he knows that disclosure of the fact is necessary to prevent some previous assertion from being a misrepresentation or from being fraudulent or material.
 (b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.
 (c) where he knows that disclosure of the fact would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part.
 (d) where the other person is entitled to know the fact because of a relation of trust and confidence between them." Restatement (Second) of Contracts § 161 (1981).
Here, Merrimack asserts that the Dufaults made a material misrepresentation when they failed to disclose on the renewal questionnaire that Dufault Jr. was a member of their household and owned an automobile. However, this Court cannot find that the Dufaults' failure to disclose that information was a material misrepresentation that would warrant partial rescission of the Policy as it applies to Dufault Jr. While a fraudulent statement, including those made without the intent to deceive, is a misrepresentation, this Court finds that the failure of the Dufaults to disclose Dufault Jr. on the renewal questionnaire was not a representation which induced Merrimack to insure the Dufaults. Evora v. Henry, 559 A.2d at 1040. Moreover, this Court finds that the non-disclosure at issue did not amount to the equivalent of an assertion. Applying the standards set forth in the Restatement (Second) of Contract, § 161 to the facts before the Court, there is no evidence that the Dufaults had knowledge that disclosure of Dufault Jr. would correct a mistake made by Merrimack. The Court also finds that the Dufaults had no reason to believe that disclosure was necessary to prevent a previous assertion from becoming a misrepresentation. Further, it does not appear that the Dufaults and Merrimack had such a relationship as would require disclosure of such information.[9] Accordingly, as this Court finds that the Dufaults did not make a material misrepresentation by failing to list Dufault Jr. on the 1998-1999 renewal questionnaire, Merrimack's request for partial rescission is denied.
 Conclusion
The fact that Dufault Jr. did not maintain the minimum underlying insurance required by Merrimack did not exclude him from the Policy's coverage. However, the Dufaults and Merrimack were mutually mistaken in their belief that Dufault Jr. was not covered by the Policy. Therefore, this Court grants Merrimack's request to reform the contract to accurately reflect the parties' intentions. The Court finds, though, that the Dufaults did not make a material misrepresentation when they did not list Dufault Jr. on the 1998-1999 renewal questionnaire. Thus, Merrimack's request for partial rescission of the Policy is denied. Counsel shall agree upon an appropriate form of order and judgment, reflective of this decision, and submit it to the Court forthwith for entry.
[1] The parties have submitted to the Court an Agreed Statement of Facts (ASF).
[2] The underlying complaint is pending in the Providence County Superior Court, PC No. 01-4566.
[3] Quincy Mutual Fire Insurance Company is the uninsured motorist carrier for Beauparlant.
[4] Travelers Insurance Company is the uninsured motorist carrier for the Woonsocket Housing Authority.
[5] This is not to say that an umbrella policy can never require insureds to maintain a minimum amount in order for an insurer to be required to provide any coverage. If the policy specifically requires underlying insurance for the policy to have effect, courts have found the lack of such minimum insurance will prevent an insurer from being entitled to coverage. SeeJacofsky v. Travelers Insurance Company, 773 N.Y.S.2d 446
(N.Y.App.Div. 2004). Here, however, the Policy does not explicitly require minimum insurance in order for the policy to have any effect, and in fact, it states simply that Merrimack's liability will not be below the minimum required amount: there is no provision which limits Merrimack's liability above the required minimum underlying insurance even if the insured does not maintain such insurance.
[6] Beauparlant asserts that the questionnaire does not ask for the names and ages of other household residents, and consequently the Dufaults could not be mistaken about the information that was not requested. (Beauparlant's Br. at 9-10.) However, Exhibit B clearly shows that the names of the household members were requested, as it provides: "List all members of the household and all operators of vehicles/watercraft as required by company." Directly below that request is a box which has spaces for names, dates of birth, drivers' license numbers and states, and vehicles and their percentage of use. This Court therefore, finds that the questionnaire requested sufficient information to determine if Dufault Jr. was intended to be excluded.
[7] Beauparlant also tries to demonstrate Merrimack's knowledge of Dufault Jr. as a household member by pointing this Court to Merrimack's language in the Policy that "You have told us you and other insured members of your household now have insurance in force as described in this endorsement." This language, however, does not evidence Merrimack's specific knowledge of Dufault Jr. or whether he was a member of the household at the time of the accident.
[8] At the April 21, 2006 hearing, counsel for Beauparlant also argued that the Court should not reform the agreement because it is too speculative to assume that Merrimack would have issued a restricted insured endorsement excluding Dufault Jr. or if they would have charged a higher premium for the increased exposure to liability. However, while the Court hesitates to speculate, it need not engage in such conjecture as the parties' Agreed Statement of Facts states that if Merrimack had not been mistaken, it would have issued a restricted insured endorsement. (ASF 14.)
[9] While an insured may have had a duty to disclose certain types of information, this Court cannot find that the identity of Dufault Jr. was the type of information which had to be disclosed, especially considering that the Dufaults did not intend for Dufault Jr. to be covered and were not deliberately withholding information in an attempt to take advantage of Merrimack. See e.g., Columbian National Life Insurance Co.v. Industrial Trust. Co., 57 R.I. 325, 339, 190 A. 13, 20 (1937) ("It was surely [insured's] duty to disclose to the company anything which came to his knowledge between the making of his application and its acceptance and which thus indicated that the warranty of sound health in the application was untrue when made.")