**Frank A. CARTER, Jr., Chief Disciplinary Counsel**

v.

**Alan T. DWORKIN and John D. Lynch.**

No. 89–280–M.P.

Supreme Court of Rhode Island.

July 11, 1989.

Frank A. Carter, Jr., Chief Disciplinary Counsel, for plaintiff.

Joseph A. Kelly, Carroll, Kelly & Murphy, for Alan T. Dworkin.

Raymond A. LaFazia, Gunning, LaFazia & Gnys, Inc., for John D. Lynch.

OPINION

PER CURIAM.

This is a disciplinary proceeding in which this court's disciplinary board has recommended that Alan T. Dworkin and John D. Lynch, respondents, be sanctioned. The genesis for the board's recommendation was a November 1982 divorce complaint that was filed in the Family Court's Kent County Division by Robert L. Shepard. The defendant was Shepard's wife, Marilyn. No children were born of the marriage. Hereafter we shall refer to the Shepards by their first names and to the respondents by their last names.

The critical issue in the Family Court litigation was the disposition of the marital domicile, which was located in the city of Warwick at 460 Country View Drive. The record indicates that in late September 1985 the Shepards, with their respective counsel, were present at the Providence County Family Court for an in-chambers conference with the trial justice. At that time Dworkin, who represented the husband, and Lynch, who represented the wife, were appointed as cocommissioners for the purpose of selling the couple's marital domicile. Edward Dooley, a realtor with offices in the city of Pawtucket, was designated the realtor who would sell the Shepards' real estate. The "asking price" was to be within the range of "$145,000 to $155,000." At one point in the conference the trial justice notified all present that the selling price would be reduced by $5,000 each week the property remained unsold. This reduction would continue until such time as the property was sold. When Marilyn heard this mandate, she exclaimed, "I don't believe this." Subsequently Lynch attempted to alleviate his client's concern

by telling her that the seven-day proviso would never be invoked. Sometime after this episode Marilyn sent Lynch a letter in which she expressed the belief that his appointment as a commissioner had "compromised his ability" to represent her. Consequently she asked Lynch to withdraw as her counsel.

Robert, who was Dworkin's client, urged Dworkin to appeal the trial justice's imposition of the seven-day proviso. Dworkin informed Robert that he would feel "uncomfortable" taking an appeal in light of the efforts expended by the trial justice. Dworkin did, however, suggest to Robert the name of another attorney who might represent Robert in the ongoing litigation. Dworkin found himself in a "bind" and filed a motion for instructions. A copy of the proposed order containing the $5,000-reduction language is to be found in the Family Court record. However, it appears that the original order was never entered in court. On December 13, 1985, both Dworkin and Lynch filed separate motions to withdraw as counsel for their clients.

As a result of the complaints of Marilyn and Robert, Dworkin and Lynch were charged with violating two provisions of the Code of Professional Responsibility,[1] specifically DR 5–103, which forbids an attorney from acquiring "a proprietary interest in the cause of action or subject matter of litigation" he or she is conducting for a client, and DR 2–110, which requires a lawyer representing a client before a tribunal to withdraw from employment if the attorney is discharged by the client. *See* DR 2–110(B)(4).

The board, however, acknowledges that in order to base a finding on DR 5–103, the board would be required to find that a cocommissioner, who is also functioning as the attorney of record, acquires a proprietary interest in any cause of action in which he or she may be appointed as commissioner by a trial justice. The board acknowledges that making such a finding would run counter to the well-established law of this jurisdiction. However, it did note that the establishment of some guidelines with regard to the practice of appointing counsel as commissioners might be in order. The sole charge pending before us relates to DR 2–110(B)(4) and the failure of Dworkin and Lynch to withdraw as attorneys for the Shepards.

There is some indication that during the pendency of this longstanding litigation, the relationships between the Shepards and their respective counsel were quite harmonious. The record indicates that in late July 1984 the Shepards agreed to have Dooley sell the marital domicile, which, at that time, had a fair-market value of $145,-000.

▮ Turning now to the Shepards' complaint about their attorneys' failure to withdraw in an expeditious manner, we would direct their attention and the attention of all interested to *Farkas v. Sadler,* 119 R.I. 35, 40, 375 A.2d 960, 962 (1977), where we recognized that "the office of an attorney admits of the very highest confidence and depends upon a working if not a harmonious relationship between counsel and client for its vitality." Because the relationship is so sensitive, a complainant may discharge counsel with or without cause and thus terminate the relationship. *Id.* However, we also emphasized that after an attorney has entered an appearance in a case, effective withdrawal, at the insistence of either counsel or client, is dependent upon the consent of the court.[2] *Id.* at 40, 375 A.2d at 963. The grant or denial of a

---

1. The Code of Professional Responsibility was superseded in November 1988 when this court adopted the Rhode Island Rules of Professional Conduct. The rules are applicable to any alleged transgression occurring on or after November 15, 1988. Rule 1.8(j) of the Rhode Island Rules of Professional Conduct bars an attorney from acquiring a proprietary interest in a client's claim but it does permit a lawyer to acquire a lien to secure payment of a fee or expenses and also allows an attorney to contract with a client in a civil case for a reasonable contingent fee.

2. Rule 1.5(c) of the Family Court Rules of Practice requires an attorney to obtain consent of the court before withdrawing as counsel. Except where another attorney enters his appearance at the time of the withdrawal, a withdrawal shall be made upon a motion with reasonable notice to the party represented.

motion to withdraw rests within the sound discretion of the trial justice and depends upon such considerations as the reasons necessitating the withdrawal, the efficient and proper operation of the court, and the effect that granting or denying the motion will have on the parties to the litigation. *Id.* at 40–41, 375 A.2d at 963. Thus it is that neither Dworkin nor Lynch could withdraw from this litigation without first obtaining the consent of the trial justice.

The board, on the one hand, claims that it was "incumbent on both counsel to move expeditiously to withdraw as counsel" but, on the other hand, concedes that "the attitude and behavior" of the Shepards impeded any expeditious disposition of their withdrawal requests.

█ Accordingly, we believe that Dworkin and Lynch, as well as the Shepards, were the unwitting victims of the trial justice's ill-conceived imposition of a discount feature that has no place in a judicial sale. Although we are extremely conscious of, and appreciate the superlative and conscientious efforts of, the individuals who make up our disciplinary board, we are constrained on this occasion to reject their recommendation that Alan T. Dworkin and John D. Lynch be sanctioned.

In responding to the board's request for guidelines relative to the appointment of litigants' counsel as commissioners, we do not intend to hold that the appointment of litigants' counsel is to be avoided at all costs. When confronted with the sale of the litigants' real estate or property a trial justice should consider, before making any such appointment, whether the litigants can sell the property, based on prior appraisals, without the intervention of commissioners. We recognize that commissioners should be appointed only when litigants are at an impasse as to the disposition of the property. When such an impasse appears, the trial justice should appoint a commissioner from a rotating court-approved list of attorneys and real estate agents. In those cases where the parties are in agreement, the trial justice may appoint the litigants' attorneys as commissioners to achieve preservation of the assets, minimize expenses, and avoid any appearance of impropriety.

We do not here and now in this disciplinary proceeding advert to prospective guidelines. However, we leave this Family Court matter for internal administration.

We would also indicate that the issue presented to us should ultimately be resolved by the justices of the Family Court by invoking their rule-making power rather than by this court when it is considering a disciplinary matter.