DECISION I INTRODUCTION AND BACKGROUND Overview
The matter before the Court involves a contract dispute over attorney's fees between Votta Votta Law Offices, Ltd., (Plaintiff), and Surama Elizabeth Silvestri, (Defendant). Plaintiff has brought suit against Defendant for amounts owed for services performed in the course of legal representation of Defendant in the Rhode Island Family Court in a divorce action brought against Defendant by Defendant's former husband. Plaintiff bases its claim on various grounds as set forth in its complaint including breach of contract, claim for services rendered, claim for an account stated, and quantum meruit. Defendant denies owing the amount stated in Plaintiff's complaint. The action was tried to the Court sitting without a jury on March 9, 2010 and March 10, 2010. The Court took the matter under advisement and set the matter down for a written decision on April 8, 2010. During the actual trial, the Court received testimony from four (4) different witnesses and received five (5) full exhibits from the Plaintiff and Defendant. *Page 2 
 Standard of Review
In a non-jury trial, the standard of review is governed by Super. R. Civ. P. 52(a). The Rule provides that "in all actions tried upon the facts without a jury . . . the court shall find the facts specifically and state separately its conclusions of law thereon." Accordingly, "the trial justice sits as a trier of fact as well as of law." Hood v. Hawkins,478 A.2d 181, 184 (R.I. 1984). In a non-jury trial, "determining the credibility of [the] witnesses is peculiarly the function of the trial justice." McEntee v. Davis,861 A.2d 459, 464 (R.I. 2004) (quoting Bogosian v. Bederman,823 A.2d 1117, 1120 (R.I. 2003)). This is so because it is "the judicial officer who [actually observes] the human drama that is part and parcel of every trial and who has had the opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." In theMatter of the Dissolution of Anderson, Zangari Bossian,888 A.2d 973, 975 (R.I. 2006).
Although the trial justice is required to make specific findings of fact and conclusions of law, "brief findings will suffice as long as they address and resolve the controlling factual and legal issues." White v. Le Clerc, 468 A.2d 289, 290 (R.I. 1983); Super. R. Civ. P. 52(a). Accordingly, a trial justice is not required to provide an extensive analysis and discussion of all evidence presented in a bench trial. Donnelly v. Cowsill,716 A.2d 742, 747 (R.I. 1998). See also Anderson v.Town of East Greenwich, 460 A.2d 420, 423 (R.I. 1983). Competent evidence is needed to support the trial justice's findings.See Nisenzon v. Sadowski,689 A.2d 1037, 1042 (R.I. 1997). Moreover, the trial justice should address the issues raised by the pleadings and testified to during the trial. Nardone v. Ritacco, 936 A.2d 200, 206 (R.I. 2007). However, a trial judge sitting as a finder of fact need not categorically accept or reject each piece of evidence or *Page 3 
resolve every disputed factual contention. Notarantonio v.Notarantonio, 941 A.2d 138, 147 (R.I. 2008) (quotingNarragansett Electric Co. v. Carbone,898 A.2d 87, 102 (R.I. 2006)).
 Summary Overview of Witness Testimony
This segment of the Decision is not intended to replace the comprehensive stenographic record nor the copious notes taken by the Court during the trial. The sole purpose of this particular section is to give a general summary and overview of the testimony of the various witnesses regarding the issues framed in the case. Specific portions of a particular witness's testimony and particular findings of fact and credibility determinations will be addressed in other parts of this Decision and may not appear in this summary overview. Plaintiff's witnesses:
 1. Jill Votta, Esq.: Ms. Votta is an attorney licensed to practice law in this jurisdiction for some thirty-five (35) years. She is a principal in the Plaintiff firm and concentrates her practice in property law and Family Court work and divorce. She testified to prior experience in the domestic unit of Rhode Island Legal Services. She testified to the background of the legal relationship, the formation of a contract with Defendant, issues encountered during her work for Defendant in a divorce action brought against Defendant by Defendant's former husband, and to the events that ultimately brought her to this Court.
 2. Mitchell S. Riffkin, Esq.: Mr. Riffkin is an attorney licensed to practice law in this jurisdiction for some forty-one (41) years, since l969. He has experience in all State courts in the jurisdiction as well as the Federal District Court and the First Circuit Court of Appeals. He testified that he concentrates his practice in Family Court divorce work, and he had represented clients in some 500 to 600 divorces in his career. He testified that he examined Plaintiff's Exhibits 2 and 3 and gave the opinion that the rate of $250 to $300 an hour was reasonable given the novelty and difficulty of the issues involved in the case. He testified that, in his opinion, the bills were fair and reasonable in light of the services performed for the Defendant as to the billing rate, number of hours spent, and overall amount billed. *Page 4 
 3. Surama Elizabeth Silvestri: Ms. Silvestri is the Defendant in the case. She represented herself pro se[1] giving testimony on her own behalf from the witness stand and being subject to cross-examination. Defendant appeared to be relatively intelligent, literate, and able to understand the proceeding as a layperson. With all due respect to the Defendant, she was clearly not as competent as a practicing attorney familiar with litigation technique and practice. It was clear that this added stress to her emotional state given the nature of the divorce proceeding. She testified about retaining the Plaintiff as her attorney in a divorce proceeding. She introduced several exhibits for identification and one exhibit that was moved as a full exhibit by Plaintiff's own counsel. (Defendant's Ex. A.) Defendant is sometimes referred to in correspondence and other papers in the case as Elizabeth Bence, her former married name. Defendant was also permitted to cross-examine the opposing witnesses.
 4. Rachel Arpin: Ms. Arpin testified that she has known Defendant for some 22 years and felt she knew her very well, She testified that she accompanied Defendant to Family Court on a particular occasion, and she observed Defendant asking Attorney Votta how much the total legal bill was going to be. Ms. Arpin also testified that she observed Defendant telling Attorney Votta that she "needed to know" the amount of her legal bill. Ms. Arpin also testified that she observed Attorney Votta tell Defendant "Don't worry" in response to Defendant's inquiries.
 5. Jill Votta, Esq.: Ms. Votta testified in rebuttal about the circumstances surrounding the signing of the Settlement Agreement used in the divorce proceeding. She also testified that she notarized Defendant's signature at the Garrahy Courthouse.
 Summary Overview of Full Exhibits
Plaintiff's 1: Written contract between Plaintiff and Defendant dated 5/10/06
Plaintiff's 2: Interim Billing Statement covering 5/10/06 to 10/30/06
Plaintiff's 3: Bill for period of 11/1/06 to 5/15/07
Defendant's A: Package of court documents related to Defendant's divorce consisting of some 16 separate items. *Page 5 
Defendant's F: E-mail to Defendant dated 9/25/07 evidencing $300 payment for Countryside (lender) which was charged to Defendant's credit card on 8/17/06.
 II ANALYSIS AND FINDINGS OF FACT Contract Testimony
Attorney Votta testified that Defendant contacted her in 2006 and asked her to represent Defendant in a divorce action brought by Defendant's husband, Richard Bence, against Defendant. (Ex. 1, copy of the retainer agreement). She testified that she filled the agreement out, and Defendant signed it. Defendant was known as Surama Elizabeth Bence at the time. The Exhibit lists the date of the agreement as 5/10/06 and indicates the nature of the representation as "Does hereby desire that VOTTA VOTTA LAW OFFICES, LTD. represent him/her in the following matter: Divorce filed by Richard Bence." The Exhibit contains a provision related to the fee for the services and indicates the fee would be $300 per hour as well as a retainer to start the case. The amount of the retainer was crossed out from $5,000 and the figure $3,500 replaced that amount. The Exhibit also contains a provision indicating the Defendant would be responsible for costs which may be incurred and that the costs are not a part of the Plaintiff's legal fees. The agreement contains a further provision indicating that Defendant understood that services could not be rendered unless required payments were made to Plaintiff in a timely fashion. Both the costs provision and timely payment provision contained a line to the immediate left of each provision allowing for an individual to place their initials in that location. The initials "SLB" appear on the Exhibit in the line to the left of each provision just described. *Page 6 
The Exhibit contains a provision at the bottom indicating: "I/We do hereby employ VOTTA VOTTA LAW OFFICES, LTD. under these terms and conditions and I/we agree to pay for said services as scheduled." Directly below that particular provision, the following appears in capital letters: I/WE HAVE READ AND UNDERSTAND THIS RETAINER AGREEMENT." The signature line directly below that provision contains the handwritten signature "S. Liz Bence." At the very bottom of the Exhibit, the following provision appears: "OVERDUE AMOUNTS SHALL BE CHARGED INTEREST AT THE RATE OF 1 1/2 PER MONTH (18% APR) CLIENT SHALL BE CHARGED FOR ALL COSTS OF COLLECTION, INCLUDING REASONABLE ATTORNEY'S FEES." There is a checkmark and initials under that provision. Defendant admitted that it was her signature on the Exhibit and testified that she did not read the exhibit because she was in an emotionally distressed period of her life due to the divorce. She also testified that she was seeking to have her legal bill covered by a legal insurance plan in which she was enrolled and was placing her trust in Attorney Jill Votta on this issue. Attorney Votta testified that the legal insurance plan only covered a nominal divorce, and the divorce action between Defendant and her husband was a contested divorce with pension and real estate issues.
 Requirements for a Contract
A contract exists when each party has manifested an objective intent to promise or be bound. UXB Sand Gravel,Inc. v. Rosenfield Concrete Corp., 641 A.2d 75, 79 (R.I. 1994). The Court finds that Attorney Votta testified credibly about the formation of the contract depicted in Exhibit 1 and all of the terms of that contract as discussed above. Defendant admitted that the signature was her own but claimed that she did not read the contract. The law is clear that a party who signs an instrument and manifests an assent to it cannot later complain *Page 7 
[s]he did not read it or understand its contents. F.D.McKenfall Lumber v. Kalian, 425 A.2d 515, 518 (R.I. 1981). Defendant testified that she was in an emotional state due to the stress of the divorce. However, there is no suggestion that Defendant was incompetent at the time she signed the contract. Defendant also said that "I never said she (Plaintiff) forced me [to sign the contract]. She testified that she "maxed out her credit card and money was an issue from day one." She testified that she made it clear that she did not have more than the $3,500[2] she paid as a retainer for the divorce. Defendant further testified that she expected that with the payment of the $3,500[3] retainer, that would constitute the entire amount she would be required to pay. Notwithstanding the distinction between what an individual's actual expectation was at the time of the contract and what that individual merely hoped for, the secret intent of one party to a contract is not binding on the other party.Retirement Board of Employees' Retirement System of R.I. vDiPrete, 845 A.2d 270, 284 (R.I. 2004). The Court finds that Exhibit 1 with its terms and signatures is objective evidence of each party's intent to be bound by the terms of that contract. The Court finds that a contract existed between the parties on such terms as are depicted in Exhibit 1 and described above.
 Duration of the Contract
The next issue that needs to be addressed in the analysis is the actual duration of the contract. The contract was formed on May 10, 2006. The Final Decree relative to Defendant's divorce was entered on May 15, 2007 but there are other factors that must be considered in order to make a finding as to the precise duration of the contract. Defendant testified credibly that she was concerned regarding how much the actual legal bill was going to amount to under the contract. She testified that she constantly asked the Attorney Votta for a bill or a statement of *Page 8 
how much the representation was actually going to cost her. This testimony was corroborated credibly by the testimony of Rachel Arpin, a friend of Defendant's for some twenty-two years. Ms. Arpin testified that she observed Defendant asking Attorney Votta how much the bill for Plaintiff's services was going to be and that Ms. Arpin observed Attorney Votta tell the Defendant, "Don't worry." Ms. Arpin testified that she observed that specific colloquy repeated on two occasions. The actual conversations appear to be conceded by Attorney Votta. Attorney Votta did testify that she told Defendant not to worry when Defendant would inquire about the specific amount of the bill. Those specific exchanges appeared to have a different meaning for each of the parties in light of the events that unfolded in the testimony regarding the time period between May 10, 2006, (the date of contract formation), and May 15, 2007, (the date Final Decree entered in the divorce case).
Exhibit 2 in the case is an interim bill for the period of 5/10/06 through 10/30/06. The Exhibit is 3 pages in length and contains 64 separate entries depicting the activity conducted on each date. The total hours billed for all activity for the entire period is depicted as 54.04 hours.
There are five (5) court appearances listed within the 64 separate entries. The dates billed for court appearances are listed as June 2 and 15; August 3 and 30; and October 11, 2006. Exhibit 2 indicates that on some of those days where a court appearance was made, other activity was performed in addition as well. Where multiple activities on behalf of the Defendant were performed on the same day, the bill does not break down the time spent on the different activity but only sets forth the cumulative time spent and billed for at the contract rate. There were no time sheets presented during the trial, and no testimony or other inquiry addressed the Plaintiff's time tracking system.[4] Notwithstanding the number of days that other activity overlapped with a *Page 9 
court appearance on the date indicated, the total amount of hours billed for the five days when there was a court appearance was 16.91 hours for the time period covered by Exhibit 2.
Notwithstanding the first day of the billing where a client conference was conducted and the file was opened, there are twelve (12) days depicted on Exhibit 2 where drafting of court documents, research, or client conferences were conducted. Exhibit 2 indicated that the total number of hours billed for that specific activity on the twelve specific days was 19.57 hours.
A number of the line item entries for specific dates on Exhibit 2 indicated that phone calls were made on the specific day indicated. Phone calls were listed as "pc" on Exhibit 2. Other entries indicated a review of certain correspondence, or a review or sending of a fax occurred on that specific date. Other entries indicated and that a letter was ostensibly drafted and sent to a particular person on that day.[5] On many days the phone calls (pc) overlapped with review, fax, and letter sending activity. The total number of specific dates on Exhibit 2 dedicated to the phone calls, reviews, faxes and letters was forty-seven (47) days. The billable time depicted on Exhibit 2 for this type of activity was generally a small amount of time for each specific increment. The lowest billable increment for any one of the 64 different entries when time was billed to the client was 0.08 hours. This increment converts to 4.8 minutes of time.[6] There are a number of 0.16 increments billed which convert to 9.6 minutes of time. The Defendant, at one point, stated during her cross examination of Attorney Votta during the trial, "I wish I knew that you were going to bill me for those calls." Plaintiff's expert witness, Mitchell S. Riffkin, Esq. testified that the bill was fair and reasonable in light of services rendered. Furthermore, the specific duration of each time increment does not appear exaggerated to the Court. Given that *Page 10 
the tasks depicted on the bill, including the calls, reviews, faxes and letters were all tasks that needed to be performed in a timely manner to facilitate the divorce on a reasonable schedule, and also given that an attorney will generally have overhead in a traditional practice, the Court notes that the tasks that were itemized actually take time, and lastly, given that these particular tasks were not specifically excepted by the contract, billing for the items by the attorney is not improper.
Attorney Votta testified that "as soon as you (Defendant) asked for a bill, I sent one. The first written statement went out right after you asked." Exhibit 2 indicates that the balance due from Defendant on October 30, 2006 was $12,409. This figure represents 54.03 hours billed at $300 per hour ($16,209) less the $3,800[7] retainer advanced by Defendant. It would appear that Defendant experienced sticker shock[8] after reviewing the bill. Defendant testified on her direct examination as well as on cross-examination that upon receiving the bill she was distressed over the size of the legal fees and described the bill as "exaggerated and unexpected." She testified that she called Attorney Votta and terminated her services. Defendant further testified that she wrote a letter to Attorney Votta terminating her services. In her testimony, Defendant specifically testified, "I sent a letter indicating I could no longer afford her. She (Plaintiff) said she would be in court come hell or high water." *Page 11 
An individual may terminate an attorney's services at any time with or without cause. See Supreme Court Rules, Rules of Professional Conduct, Rule 1.16. The Rule provides in pertinent part:
 Rule 1.16. Declining or Terminating Representation
 (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
 (1) the representation will result in violation of the rules of professional conduct or other law;
 (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
 (3) the lawyer is discharged. (emphasis added) * * *
 (c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
 (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.
The comments to this particular rule provide in relevant part:
 Discharge
 A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.
However, after an attorney has entered an appearance in the case, effective withdrawal, at *Page 12 
insistence of either counsel or client, is dependent upon consent of court. See Carter v Dworkin,561 A.2d 389, 390 (R.I. 1989) quoting Farkas v Sadler,119 R.I. 35, 40, 375 A.2d 960, 962 (1977). The Supreme Court noted, "[T]he grant or denial of a motion to withdraw rests within the sound discretion of the trial justice and depends upon such considerations as the reasons necessitating the withdrawal, the efficient and proper operation of the court, and the effect that granting or denying the motion will have on the parties to the litigation." Carter v. Dworkin, 561 A.2d at 390-391.See also Rule 1.16, Declining or Terminating Representation, section (c) above. The rationale for requiring court consent to any withdrawal of counsel is related to the particular court's inherent interest in keeping litigation matters moving as well as the opposing party's interest in the litigation.
In the instant case, Defendant admitted on cross-examination that she did not go to the Family Court and seek Court permission to proceed without Plaintiff. While Defendant communicated a desire to terminate, that desire never became effective. Further consideration of this issue reveals that while the Superior Court file contains letters from Defendant to Attorney Votta dated November 14, 2006 and November 16, 2006; and from Attorney Votta to Defendant dated November 16, 2006, these letters were never entered into evidence as full exhibits. Attorney Votta's letter to Defendant dated November 16, 2006 contains an offer by Plaintiff to forego any further charges for legal services as of that time provided certain conditions were met. There is relatively little testimony on the record relative to the ultimate outcome of all of those conditions, any excuse for delay or non-performance by the Defendant, as well as the letter itself. It is at least possible that Defendant may have been able to make a case to keep the legal fee at the $12,409 balance due to Plaintiff as of October 30, 2006. This may be due in large part to the *Page 13 pro se[9] status of Defendant. Although this Court has recognized that litigants have the right to represent themselves aspro se litigants, "the courts of this state cannot and will not entirely overlook established rules of procedure, `adherence to which is necessary [so] that parties may know their rights, that the real issues in controversy may be presented and determined, and that the business of the courts may be carried on with reasonable dispatch.'" Gray v. Stillman White Co .,522 A.2d 737, 741 (R.I. 1987) (quoting O'Connor v. Solomon,103 Conn. 744, 131 A. 736, 736 (1926)). Notwithstanding Defendant's appreciation or lack thereof for the significance of the letters, the Rules of Professional Conduct still impose a duty of candor toward the tribunal, [10] the implications of which are always important to the integrity of any tribunal. In the instant case, Attorney Votta testified that she offered a discretionary professional courtesy discount to the Defendant in the amount of $6,111.00. This amount coincides exactly with the amount of legal billing for services generated after October 30, 2006 up to and including May 15, 2007. Plaintiff introduced Exhibit 3 which depicts that an additional 20.37 hours were spent during this particular period at the rate of $300 per hour. [20.37 hours X $300/hr = $6,111.00]. Exhibit 3 also indicates that Plaintiff was waiving interest up to that point in the amount of $1,159.55 for a total reduction in legal fees of $7,270.55. Attorney Votta testified that the reduction was a "professional courtesy" extended by her office to Defendant. She further testified that normally, not that much of a courtesy was ever extended to anyone but the extension of some courtesy was a normal practice of the office. The extension of the courtesy however, was dependent on Defendant's working out a payment plan and following through. Attorney Votta testified that Defendant would make an agreement but never paid anything except for the $3,800 in advances as depicted on Exhibit 2. While Attorney Votta never testified about her own November 16, 2006 *Page 14 
letter and her expressed willingness to forego charging anything further for Defendant's divorce subject to certain conditions described in that letter, the Court is satisfied that the opportunity to cap the fee did actually exist for the Defendant even though testimony on the issue might have been developed differently from that which the record presently reflects.
Given the failure to effectively terminate the representation, the Court is constrained to find that the duration of the contract between Plaintiff and Defendant ran from May 10, 2006 to May 15, 2007.
 Amount Due for Legal Services
As set forth on Exhibit 3, the total amount due as of May 15, 2007 is listed as $18,520. Plaintiff's expert, Attorney Rifkin, testified that the amount due was fair and reasonable in light of services rendered. On top of this amount, the contract provides for interest in the amount of 1 ½ % per month (18% per annum) from May 15, 2007, plus an attorney's fee. If this matter stretches to May 15, 2010 (3 full years), the Plaintiff would be entitled to request the $18,520 plus interest for 3 full years (54%). The interest alone would amount to $10,000.80 at that time alone, bringing the balance to $28,520 to which a reasonable attorney's fee would also be added.
 Other Considerations
The Court realizes that the specific amount described above would seem high to anyone. The Court also realizes that the equity in Defendant's home as well as her pension was untouched in the divorce proceeding. Defendant has resisted any efforts to resolve or compromise the amount due in the instant case. That activity has included filing a complaint against Attorney Votta with Disciplinary Counsel, [11] and moving to reopen the trial to request this Court order that the legal bills be submitted to a legal insurance plan Defendant is currently enrolled in. The Court denied the motion to reopen as well as the requested relief on several *Page 15 
grounds, including the fact that the legal insurance plan was not a party to the proceeding, the fact that Plaintiff contests that the bills are payable through the insurance plan, the fact that there was testimony covering this precise issue during the trial, and the fact that equity may not be available for such relief given that there appears to be an adequate remedy at law. Defendant appears to hold out the hope that this Court will award no damages, or an amount significantly lower than any offer in the proceedings thus far. The Court is not entirely insensitive or unsympathetic. Defendant is faced with the prospect of a large judgment against her. The Court is aware of Defendant's financial situation, having listened to testimony indicating her salary at the time of the divorce as well as the burdens related to the raising of two children and the prospect of paying for their education. The Court has contemplated the matter on a daily basis since the trial occurred on March 9 and March 10, 2010. This Court is also aware that it is bound by the rule of law and principles of contract law. Our own Supreme Court has noted the inherent limitations of the judicial role. See State of Rhode Island v Lead IndustriesAssociation, Inc., 951 A2d 428, 436 (2008) wherein the Court approvingly quotes United States Supreme Court Justice Benjamin N. Cardozo, who states in relevant part, "[T]he judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness. * * *"
The Supreme Court also quotes current United States Supreme Court Chief Justice John G. Roberts, Jr., "[J]udges must be constantly aware that their role, while important, is limited. They do not have a commission to solve society's problems, as they see them, but simply to decide cases before them according to the rule of law." John G. Roberts, Jr., United States Senate Committee on theJudiciary Questionnaire 66, http:// www. nytimes. com/ packages/ pdf/ *Page 16 
politics/ 20050802 roberts 2. pdf) (August 2, 2005).[12]Id. 951 A.2d at 436.
 Conclusion
This Court finds that a valid contract exists between Plaintiff and Defendant on the terms described above. The Court finds that Plaintiff is entitled to recover the sum of $18,520 plus interest at 18% per annum under the contract plus a reasonable attorney's fee. The attorney's fee may be litigated at a future proceeding and thereafter, counsel may move for entry of judgment with the attorney's fee and all appropriate interest due at the time.
[1] Proceeding "pro se" refers to the instance of a person representing himself or herself without a lawyer in a court proceeding, whether as a defendant or a plaintiff and whether the matter is civil or criminal. "Pro se" is a Latin phrase meaning "for oneself."
[2] Defendant actually advanced the sum of $3,800 in payments of $300 on 5/10/06; $3,200 on 5/30/06; and $300 on 5/31/06 as depicted on Exhibit 2.
[3] Id.
[4] It is unknown if Plaintiff actually had a formal time sheet, time slip, or computerized time tracking system. There does not appear to be a requirement to utilize one under the Rules of Professional Conduct.
[5] Exhibit 2 simply lists the word "letter" with a name following the word. The Court assumes that this means the bill consists of preparing for, actual drafting, or dictating the letter, and sending same with copies sent and filed where appropriate.
[6] See entry for 5/22/06 on Exhibit 2.
[7] See Footnote 2, supra.
[8] Sticker shock — noun — unpleasant surprise on learning of an unexpectedly high price for an item. Random HouseDictionary 2010. See John V. Heutsche Co. L.P.A.vMcNea, 151 Ohio Misc. 2d 23, 25, 905 N.E.2d 1303, 1305 (2008) for a decision of the Cleveland Municipal Court in Ohio involving a situation where the named defendant consulted with four different lawyers, plaintiff among them, in anticipation of a divorce filing by his wife. Defendant met with plaintiff or his staff, or consulted with them by phone, on August 7 and 23 and September 8 and 13, 2006. Five weeks after the parties' initial meeting, plaintiff sent defendant a draft attorney-client fee agreement. However, when defendant learned that he might have to pay between $5,000 and $50,000 for plaintiff's legal services depending on how contentious or lengthy the divorce proceedings were, he suffered "sticker shock" and decided not to hire plaintiff. He did not sign the draft agreement. On October 23, 2006, he sent plaintiff a letter making clear that plaintiff did not represent him.
[9] See Footnote 1 supra.
[10] See Supreme Court Rules, Article V, Rules of Professional Conduct, Rule 3.3, Candor Toward the Tribunal and accompanying Comments.
[11] That complaint has been dismissed by Disciplinary Counsel.
[12] The nytimes cite may now be unavailable to non subscribers as of April 5, 2010. The material may be accessed at http://www.gpoaccess.gov/congress/ senate/judiciary/sh109-158/browse.html; Senate Committee on the Judiciary: S. Hrg. 109-158, Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States; September 12-15, 2005.